In the MATTER OF THE REHABILITATION OF SEGREGATED ACCOUNT OF AMBAC ASSURANCE CORPORATION:

Ted NICKEL and Office of the Insurance Commissioner, Petitioners-Respondents,

AMBAC, Interested Party-Respondent,

UNITED STATES OF AMERICA, Interested Party-Appellant-Petitioner,

ACCESS TO LOANS FOR STUDENT LOAN CORPORATION, Assured Guaranty Corporation, Aurelis Capital Management LP, Bank of America, N.A., Bank of New York Mellon, Countrywide Home Loans Servicing L.P., Customer Asset Protection Company ("CAPCO"), Depfa Bank, plc, Deutsche Bank National Trust Company, Deutsche Bank Trust Company Americas, Eaton Vance, Federal Home Loan Mortgage Corporation ("Freddie Mac"), Federal National Mortgage Association ("Fannie Mae"), Fir Tree Inc., Goldman Sachs & Co., Inc., HSBC Bank USA, National Association, King Street Capital Master Fund, Ltd., King Street Capital, L.P., Knowledgeworks Foundation, Lloyds TSB Bank plc, Monarch Alternative Capital LP, Nuveen Asset Management, One State Street LLC, PNC Bank, Restoration Capital Management LLC, Stone Lion Capital Partners LP, Stonehill Capital Management LLC, Treasurer of the State of Ohio, U. S. Bank National Associa-

48

tion, Wells Fargo Bank, N.A., Wells Fargo Bank, National Association as Trustee for the LVM Bondholders, Wilmington Trust Company and Wilmington Trust FSB, Interested Parties.

Supreme Court

*No. 2011AP987. Oral argument December 2, 2011. —Decided March 8, 2012.*

2012 WI 22

(Also reported in 810 N.W.2d 450.)

50

For the interested party appellant-petitioner, there were briefs filed by *Richard D. Humphrey*, Assistant U.S. Attorney, Madison and *Anthony T. Sheehan*, with the U.S. Department of Justice, Washington D.C., and oral argument by *Anthony T. Sheehan*.

For the interested party respondent, there was a brief filed by *Daniel W. Stolper*, *Barbara A. Neider* and *Stafford Rosenbaum, LLP*, Madison and *Richard W. Reinthaler*, *Peter A. Ivanick*, *Henry J. Ricardo*, *Emily L. Saffitz* and *Dewey & LeBoeuf, LLP*, New York.

For the petitioners-respondents, there was a brief filed by *Michael B. Van Sicklen*, *Naikang Tsao*, *Matthew R. Lynch* and *Foley & Lardner, LLP*, Madison, and oral argument by *Michael B. Van Sicklen*.

¶ 1. N. PATRICK CROOKS, J. This case requires us to answer a threshold question concerning whether an appeal in this insurance company rehabilitation case may go forward. The court of appeals granted the motion of the Office of the Commissioner of Insurance (Commissioner) to dismiss the appeal by the United States.[1] The Commissioner had argued that the appeal should be dismissed either on the grounds that the notice of appeal was fundamentally defective such that the court of appeals had no jurisdiction or on the grounds that the United States had waived its right to appeal issues by failing to appear in the circuit court. The United States Department of Justice attorney who signed the notice of appeal was not admitted to practice law in Wisconsin and had not obtained pro hac vice admission. The court of appeals concluded that the notice of appeal did not include a signature of an "attorney of record" as Wis. Stat. § 802.05 requires. The court of appeals did not decide the waiver issue but dismissed on jurisdictional grounds. The United States petitioned this court for review, which we granted. We affirm the court of appeals on the basis of waiver.

## I. INTRODUCTION

¶ 2. The United States seeks to pursue an appeal of a circuit court order confirming a rehabilitation plan[2] for the Segregated Account of Ambac Assurance Corp.

---

[1] *In the Matter of the Rehab. of: Segregated Account of Ambac Assurance Corp.,* No. 2011AP987, unpublished slip op. (Wis. Ct. App. May 3, 2011).

[2] Chapter 645, the Insurers Rehabilitation and Liquidation Act, sets forth the process of a rehabilitation proceeding, a process created by statute to "protect the interests of the insureds, creditors and the public generally" by intervening to prevent the failure of a financially troubled insurance company.

(Ambac). The account had been created under Wis. Stat. § 611.24(2)[3] with the approval of the Commissioner in response to Ambac's rapidly deteriorating financial condition and the need to protect its policyholders. As the court stated in the decision and final order, "Recognizing that a full rehabilitation or liquidation would have triggered covenants across almost all policies and caused other adverse consequences and collateral damages, OCI determined that a segregated account approach would have the most beneficial outcome for all policyholders." In other words, the step was

Wis. Stat. § 645.01(4)(2009–10). All subsequent references to the Wisconsin Statutes are to the 2009–10 version unless otherwise indicated. The procedures set forth in this chapter are created as the alternative to bankruptcy proceedings, which are prohibited by statute for insurers. Wis. Stat. § 645.035(2).

[3] Wis. Stat. § 611.24(2), titled "Optional segregated accounts," states, "With the approval of the commissioner, a corporation may establish a segregated account for any part of its business. The commissioner shall approve unless he or she finds that the segregated account would be contrary to the law or to the interests of any class of insureds." The Comment adds clarification as follows:

> Sub. (2) provides for optional segregated accounts under any circumstances the corporation wishes, if the separation meets the commissioner's approval. This [in] effect extends to all insurance the liberality of former s. 206.385(1), but protects insureds by requiring the commissioner's approval. . . . . The basic idea behind segregated accounts is that different operations can be kept independent without formally creating a separate corporation. A segregated account is in some respects like a "corporation within a corporation". Its legal nature and treatment is prescribed in sub. (3). Sub. (3)(a) requires that a segregated account be equipped with an adequate share of the corporation's capital and surplus. This is indispensable if the account is to be expected to function and survive like a separate corporation.

Legislative Council Note, 1971, Wis. Stat. Ann. § 611.24 (West 2006).

taken to segregate some of Ambac's most potentially damaging liabilities so that losses from those did not trigger a meltdown that would be catastrophic for its policyholders. The Segregated Account was therefore separated from the "General Account" and capitalized through "a Secured Note for $2 billion and an Excess-of-Loss Reinsurance Agreement." The Commissioner's proposed rehabilitation plan for the Segregated Account was presented to the Circuit Court for Dane County, with the Honorable William D. Johnston, Lafayette County Circuit Court, presiding by designation. The rehabilitation plan was ultimately confirmed.

¶ 3. The order confirming the plan contained a provision[4] enjoining the Internal Revenue Service (IRS) and other parties from pursuing claims against the Segregated Account and reserving exclusive jurisdiction over "any such actions, claims or lawsuits." The United States filed an appeal of the order because the Internal Revenue Service had made a tentative tax refund to Ambac of more than $700 million, and the potential liability related to that refund had become a part of the rehabilitation proceeding. The type of refund involved, a tentative carryback adjustment,[5] is

---

[4] The Decision and Final Order states that "prior orders of this Court shall remain in full force and effect," incorporating its prior injunction prohibiting the IRS from "commencing or prosecuting any actions, claims, lawsuits or other formal legal proceedings" against several entities, including the Segregated Account of Ambac Assurance Corporation.

[5] The tentative refund was made pursuant to 26 U.S.C.A. § 6411, which requires the IRS to refund allegedly overpaid corporate taxes within 90 days of an application by a corporate taxpayer and states in part,

A taxpayer may file an application for a *tentative carryback adjustment of the tax for the prior taxable year* affected by a net

---

54

made with the understanding that the IRS is entitled to verify the basis for the refund and recover any amounts it determines were erroneously refunded.[6] In the course of the rehabilitation proceedings, the Segregated Account had been allocated by Ambac any liabilities arising from a review of that refund.

operating loss carryback provided in section 172(b), by a business credit carryback provided in section 39, or by a capital loss carryback provided in subsection (a)(1) or (c) of section 1212, from any taxable year.

*See* 15 Mertens Law of Federal Income Taxation § 58:103 ("Since refunds pursuant to a claim could take several years, taxpayers in this situation can get immediate refunds of over-payments by filing an application for a prompt tentative refund.").

[6] The United States Tax Court described the steps taken by the Commissioner of Internal Revenue regarding tentative carryback adjustments under 26 U.S.C. § 6411 as follows:

Upon receiving an application for a tentative refund, the Commissioner is required within a 90–day period to undertake a "limited examination" of the application to discover omissions and errors of computation, determine the amount of the decrease in the tax occasioned by the carryback, and make the appropriate credit or refund. See sec. 6411(b); sec. 1.6411–3, Income Tax Regs.

The tentative refund provisions were designed to give financially ailing taxpayers a quick infusion of cash without subjecting the claim to the delay attending a formal examination, as well as to provide relief from the strict application of the annual accounting period. Because of the limited time within which respondent must act, if he is to act at all, on an application for tentative carryback adjustment, the formal examination of whether the taxpayer is entitled to retain the tentative refund necessarily happens after the refund payment has been made.

When it turns out (or respondent determines after a more leisurely examination) that a taxpayer is not entitled to retain a tentative refund, respondent has three remedies to recover the tentative refund.

*Acme Steel Co. v. Comm'r of Internal Revenue*, 85 T.C.M. (CCH) 1208, *22 (T.C. 2003) (citations omitted).

¶ 4.  That allocation had occasioned an amendment to the Segregated Acount's plan of operation on November 8, 2010, as well as an order for temporary supplemental injunctive relief, which made the earlier injunction that had been entered in March applicable to the newly allocated contingency liabilities from the tentative refund. The United States immediately received notice of the temporary injunction concerning the contingent liabilities. Representatives of the IRS were personally served the next day, on November 9, 2010, with written notice of the order for temporary injunctive relief. The order included instructions for any party wishing to seek "modification or dissolution" of part or all of the order to "fil[e] a written motion with [the circuit court] no later than 45 days" after the issuance of the order. The United States was also served by mail on November 10, 2010, with written notice of the dates of the upcoming confirmation hearing for the rehabilitator's plan of rehabilitation. The written notice provided to the IRS also directed interested parties to a court-approved web site where all filings and notices in the case were compiled for the convenience of the parties.

¶ 5.  Despite receiving notice, the United States filed no written motion in the circuit court seeking the modification or dissolution of the order and remained absent during the five days of the confirmation hearing.[7]

---

[7] A hearing was later put on the rehabilitation court's calendar at the request of the Commissioner to address the United States' objections to the order, with notice provided to the United States. That hearing was eventually removed from the court's calendar following the United States' efforts in federal court to obtain an injunction to bar the circuit court from holding the hearing.

¶ 6. On January 24, 2011, having heard five days of testimony and one day of argument, and having ruled on scores of motions from parties in interest, the circuit court issued its decision and final order granting the Commissioner's motion for confirmation of the rehabilitation plan. The United States then filed a notice of appeal, stating that it was seeking to "preserve its right to appeal within the Wisconsin state court system" but asserting that "the Court of Appeals . . . should hold this appeal in abeyance pending the outcome of the federal appeals." In a later filing with the court of appeals, the United States restated its reason for filing the notice of appeal:

> The United States also has consistently asserted: (1) that it does not admit that the Wisconsin state courts have properly asserted jurisdiction over the United States; (2) that the federal courts, not Wisconsin state courts, properly have jurisdiction over the issues raised by the United States; and (3) that it was appealing to this Court only to preserve its Wisconsin appellate rights should the Seventh Circuit hold that the United States had to pursue its rights in the Wisconsin Courts.

(The federal appeals were appeals taken by the United States of adverse decisions in the United States District Court for the Western District of Wisconsin, which had twice rebuffed attempts by the United States to circumvent the circuit court's injunction.[8])

___

[8] In the cases—the first a removal of the case to the federal court and the second a collateral attack seeking a federal injunction dissolving the circuit court's order—the district court had ruled that Wisconsin law "vests jurisdiction in the state rehabilitation court over matters related to the rehabilitation of an insurer" and that " [the district court] lacks jurisdiction over this case." *In the Matter of the Rehabilitation of Segregated Account of Ambac Assurance Corp.: Nickel v. United States*

57

¶ 7. The court of appeals disregarded the United States' suggestion that it hold the appeal in abeyance. Rather, the court of appeals found that due to a defect in the filing of the notice of appeal, it had no jurisdiction. It therefore granted the motion by the Commissioner to dismiss the United States' appeal. The court of appeals concluded that contrary to appellate rules,[9] the IRS's notice of appeal was "signed by someone who was not authorized to do so without first taking additional measures to obtain pro hac vice status." *In the Matter of the Rehab. of: Segregated Account of Ambac Assurance Corp.*, No. 2011AP987, unpublished slip op. at 9 (Wis. Ct. App. May 3, 2011). The Department of Justice attorney who signed the document had neither ob-

---

*(Nickel I)*, 782 F. Supp. 2d 743, 749 (W.D. Wis. 2011); *United States v. Wis. State Cir. Ct. for Dane Cnty. (Nickel II)*, 767 F. Supp. 2d 980, 985 (W.D. Wis. 2011). The rulings in both cases have been appealed, and the appeals are currently pending in the Seventh Circuit Court of Appeals. (The United States Court of Appeals for the Seventh Circuit issued an order in the first of the appeals requesting a memorandum to answer the question of why the appeal should not be dismissed in light of the fact that orders remanding for a lack of subject matter jurisdiction are not reviewable. *Nickel v. United States,* No. 11–1158 (7th Cir. Jan. 20, 2011) ("In the present case, the district court explicitly determined that it lacked subject matter jurisdiction and sent the case back to state court. As such, it appears that the order is not reviewable.").) *See* ¶ 26 and ¶¶ 30–31 *infra,* for further discussion of the district court's analysis.

[9] The rules cited by the court of appeals were the subscription requirement of Wis. Stat. § 802.05 (which states that a paper "shall be signed by at least one attorney of record in the attorney's individual name" on behalf of a party) and the rules authorizing licensed Wisconsin attorneys and attorneys licensed elsewhere who have been authorized to appear pro hac vice to serve as attorneys of record. *See* SCR 23.02(1) and 10.03(4)(b).

tained admission to practice law in Wisconsin nor requested pro hac vice admission. Viewing that violation of the rule as "a fundamental defect which cannot be corrected," the court of appeals dismissed the IRS's appeal. *Id.*

¶ 8. Before this court, the parties disagree as to whether, under Wisconsin Supreme Court Rule (SCR) 23.02(2), pro hac vice admission is required for a United States Department of Justice attorney appearing in Wisconsin courts, and whether preemption by the Supremacy Clause of the United States Constitution renders any Wisconsin provision that would require such admission inapplicable to a United States Department of Justice attorney. The parties also disagree about whether the United States, by failing to challenge the injunction when it had the opportunity to do so in the circuit court, waived its right to appeal the order.[10]

---

[10] We use the word "waiver" here, as both parties do in their filings, to mean failing to raise and preserve an issue before the circuit court, which is consistent with the use of the word "waiver" by this court in many cases cited herein. *See, e.g., State v. Huebner,* 2000 WI 59, ¶¶ 32–35, 235 Wis. 2d 486, 611 N.W.2d 727. Courts have often used the words "waiver" and "forfeiture" interchangeably. However, there are cases which make a distinction between the act of failing (whether by accident or by strategic intention) to assert a right, which is characterized in those cases as "forfeiture," and the act of affirmatively and deliberately relinquishing a right, which in those cases is denominated as "waiver." *See United States v. Olano ,* 507 U.S. 725, 733 (1993), *State v. Ndina,* 2009 WI 21, ¶ 28, 315 Wis. 2d 653, 761 N.W.2d 612. As an example of the type of right in the second category in a criminal context and an analysis of whether it can be relinquished, *see State v. Koopmans,* 210 Wis. 2d 670, 673, 563 N.W.2d 528 (1997) (holding that a defendant cannot waive the statutory right to be present at sentencing). *Koopmans* is not applicable in the context presented here.

¶ 9.   What is inescapable in reviewing the record in this case is the sense that the United States almost begrudgingly took steps "to preserve its right to appeal" in only the most technical sense while, ironically, overlooking fundamental appellate principles establishing what parties must do to preserve that right: *raise their issues in the circuit court in the first instance.* The court of appeals dismissed the appeal on the basis of an unauthorized signature on the notice of appeal. In reaching our conclusion, we focus not on the signature, but on the fact that the notice of appeal itself was the only effort by the United States to involve itself with the circuit court. It did, as noted, attempt to remove this matter to federal court. Despite its apparent outrage at the injunction (in one filing to the court of appeals it stated, "[W]e are not aware of any other creditor that was so mistreated"), the United States chose to remain on the sidelines while the rehabilitation was proceeding in the circuit court and chose not to raise its objections until after the final order was entered.

¶ 10.   The United States conceded at oral argument that it made an intentional decision not to litigate any of the issues involved in the circuit court. Our case law is clear and consistent:   failure to preserve issues at the circuit court means that they are waived. Applying well-established principles of law that apply equally to the government when it is a party, we hold that such a decision precludes the United States from pursuing relief in the court of appeals. We therefore affirm the decision of the court of appeals to dismiss the United States' appeal.

## II.   BACKGROUND

¶ 11.   As is clear from the lengthy summary above, this case arises in the context of a large and complex

proceeding, but the question presented by this appeal is a narrow one. The question we address is whether the court of appeals erred in dismissing the appeal. The United States asks us to reverse that threshold determination and remand to the court of appeals. Alternatively, it asks for a remand to permit the court of appeals to consider exercising its discretion under Wis. Stat. § 752.35 to hear the appeal in spite of any defect in the notice of appeal that would otherwise preclude review.

¶ 12. The context in which this case arises is the financial crisis that began unfolding in 2007. Ambac, which had for nearly 30 years been a large insurer of financial guarantees, had insured financial products that are by now notorious for their risks, such as residential mortgage-backed securities, credit default swaps, and commercial asset-backed securities. As the scale of the risks associated with these financial products became clear and Ambac's potential losses mounted, the Commissioner took steps to prevent the company's collapse.

¶ 13. The timeline for the rehabilitation case begins on March 24, 2010, when the Commissioner filed a petition, pursuant to the provisions of Wis. Stat. ch. 645, asking that the circuit court for Dane County rehabilitate the Segregated Account. As part of the rehabilitation, the Commissioner filed a motion, which the circuit court granted, to obtain "first-day injunctive relief" to bar entities from proceeding against the Segregated Account. The rehabilitation proceeded. Dozens of entities filed motions to intervene.

¶ 14. On November 8, 2010, the Commissioner submitted a notice of amendment to the plan of operation for the Segregated Account and moved for Temporary Supplemental Injunctive Relief, which the court granted ("the November Order"). The November Order

61

stated that "[c]ounsel for [the Commissioner of Insurance for the State of Wisconsin] shall promptly serve copies of this Order on . . . the Department of Treasury – Internal Revenue Service, and any other party-in-interest [the Commissioner of Insurance] believes is directly affected by this Order, including those who have appeared in these rehabilitation proceedings." The November Order also stated,

> If any interested parties believe any portion of this Order is unwarranted by the facts or the law, such parties may seek modification or dissolution of part or all of this Order by filing a written motion with this Court no later than 45 days following the issuance of this Order. If one or more such timely motions are received, the Court may set a schedule for responsive briefing and a hearing regarding the modifications or dissolutions sought.

It is not disputed that the Commissioner served the IRS copies in compliance with the November Order. There is no dispute that despite receiving notice of this order as well as notice of the scheduled hearings, the IRS filed no written motion with the circuit court seeking modification of the order and made no appearance at the hearings.

¶ 15. Rather than seeking modification or dissolution of the injunction, the United States removed the case to the United States District Court for the Western District of Wisconsin on Dec. 8, 2010. On January 12, 2011, the district court held a hearing on the Commissioner's motion to remand to the Dane County Circuit Court and the United States' motion "to dissolve the order entered in the state court enjoining the United States from taking certain actions related to the potential tax liability of Ambac Assurant Corp." The district court in its subsequent decision concluded that

"removal of the state court injunction matter is preempted under the McCarran-Ferguson Act, which leaves to the states the business of insurance." *In the Matter of the Rehabilitation of Segregated Account of Ambac Assurance Corp.: Nickel v. United States (Nickel I)*, 782 F. Supp. 2d 743, 744 (W.D. Wis. 2011). It also concluded that "the principles of comity and federalism set forth in *Burford v. Sun Oil Co.* require abstention in this case." *Id.* (citation omitted). Significantly, the district court stated,

> The United States has not argued that its claims cannot be heard in the rehabilitation proceeding. The state rehabilitation court has allowed entities with an interest in the rehabilitation an ongoing right to be heard and apply for relief. . . . As other claimants have done, the United States may present its challenges to the state court, argue its position on the merits and if the result is unsatisfactory, appeal to the Wisconsin Court of Appeals.

*Id.* at 752. The district court quoted from a United States Supreme Court opinion[11] which had denied a similar attempt to change the forum: "We cannot see that there would be impairment of any rights the United States may possess, or any sacrifice of its proper dignity as a sovereign, if it prosecuted its claim in the appropriate forum where the funds are held." *Id.* Concluding that removal was improper, the district court on January 14, 2011, granted the motion to remand the case to the Circuit Court for Dane County.

¶ 16.    On January 24, 2011, the circuit court entered a final, appealable order approving the Segre-

---

[11] *United States v. Bank of N.Y. & Trust*, 296 U.S. 463, 480–81 (1936).

gated Account's plan of rehabilitation; the order left in place the earlier temporary injunction against the IRS and other parties.

¶ 17. The United States then filed a separate suit under the district court's original jurisdiction seeking both injunctive and declaratory relief. That suit was also dismissed, on February 18, 2011, again for lack of jurisdiction. As noted above, appeals from both of those cases are currently pending in the United States Court of Appeals for the Seventh Circuit.[12]

¶ 18. On March 9, 2011, in its first filing in this action in the Wisconsin courts, the United States filed a timely notice of appeal of the circuit court's final order concerning the rehabilitation plan. The United States' notice of appeal was signed by an attorney in the Tax Division of the United States Department of Justice who was licensed to practice law in Washington, D.C., and California. The attorney was not admitted to practice as a member of the Wisconsin bar and had not applied for pro hac vice status.

¶ 19. On March 25, 2011, the Commissioner moved the court of appeals to dismiss the United States' appeal. The Commissioner argued that the United States had failed to preserve issues for state court review and had waived its right to appeal. The Commissioner also argued that Wis. Stat. § 802.05(1) requires all filings in the Wisconsin state courts to be signed by an attorney admitted to practice in Wisconsin and that without timely and fundamentally compliant notice of appeal, the court of appeals lacked jurisdiction of the case. The court of appeals agreed and granted the motion to dismiss on jurisdictional grounds. This court granted the United States' petition for review.

[12] *See supra* ¶ 6, n.8.

## III.   DISCUSSION

¶ 20.   This case presents the questions of whether the court of appeals has jurisdiction to hear an appeal, and whether a party has waived its right to appeal. These are questions of law that we review de novo. *Town of Delafield v. Winkelman,* 2004 WI 17, ¶ 14, 269 Wis. 2d 109, 675 N.W.2d 470. The first question we must resolve is the question of whether the general principle of waiver applies in these circumstances. If it does apply, that issue would be dispositive of the case, and there is no need to reach questions concerning preemption, the supremacy clause, and whether the signature was a fundamental or technical defect and, if so, whether such a defect is fatal to the appeal.

¶ 21.   The concept that an issue not raised in circuit court is deemed waived is one of long standing. In a 1917 case, this court stated, "One of the rules of well-nigh universal application established by courts in the administration of the law is that questions not raised and properly presented for review in the trial court will not be reviewed on appeal." *Cappon v. O'Day,* 165 Wis. 486, 490, 162 N.W. 655 (1917). "The practice of this court is not to consider an issue raised for the first time on appeal." *Terpstra v. Soiltest, Inc.,* 63 Wis. 2d 585, 593, 218 N.W.2d 129 (1974). "The burden is upon the party alleging error to establish by reference to the record that an error was specifically called to the attention of the trial court." *Id.* at 594.

¶ 22.   This court set forth the reasoning behind the rule in *State v. Huebner,* and we cannot improve on our articulation there of this "essential principle":

65

It is a fundamental principle of appellate review that issues must be preserved at the circuit court. Issues that are not preserved at the circuit court, even alleged constitutional errors, generally will not be considered on appeal. The party who raises an issue on appeal bears the burden of showing that the issue was raised before the circuit court.

We have described this rule as the "waiver rule," in the sense that issues that are not preserved are deemed waived. The waiver rule is not merely a technicality or a rule of convenience; it is an essential principle of the orderly administration of justice. The rule promotes both efficiency and fairness, and "go[es] to the heart of the common law tradition and the adversary system."

*Huebner*, 235 Wis. 2d 486, ¶¶ 10–11 (citations omitted). We went on to explain how this simple rule accomplishes many objectives that are crucial to the efficient functioning of a fair judicial system:

Raising issues at the trial court level allows the trial court to correct or avoid the alleged error in the first place, eliminating the need for appeal. It also gives both parties and the trial judge notice of the issue and a fair opportunity to address the objection. Furthermore, the waiver rule encourages attorneys to diligently prepare for and conduct trials. Finally, the rule prevents attorneys from "sandbagging" errors, or failing to object to an error for strategic reasons and later claiming that the error is grounds for reversal. For all of these reasons, the waiver rule is essential to the efficient and fair conduct of our adversary system of justice.

*Id.*, ¶ 12 (citations omitted).

██

¶ 23. Skepticism toward review of unpreserved error is especially warranted where a party has been complicit in the error cited as grounds for reversal. In

66

*State v. Gove,* this court declined to order a new trial in the interest of justice where the error complained of was consented to below. We said, "Indeed, as demonstrated by the record, Gove affirmatively contributed to what he now claims was trial court error. It is contrary to fundamental principles of justice and orderly procedure to permit a party to assume a certain position in the course of litigation which may be advantageous, and then after the court maintains that position, argue on appeal that the action was error." *State v. Gove,* 148 Wis. 2d 936, 944, 437 N.W.2d 218 (1989).

¶ 24. The importance to the system of real appellate review, and not merely endless error-correcting review, requires holding parties accountable for the litigation strategies they choose in the circuit court. In a concurrence which criticized the majority for choosing to reach the merits in a case where the issue had been waived by consent in the lower court, Justice Scalia expressed concerns about the costs of "abandoning" conscientious application of the waiver principle:

> These [waiver] rules reflect the principle that a trial on the merits, *whether in a civil or criminal case,* is the "main event," and not simply a "tryout on the road" to appellate review. The very word "review" presupposes that a litigant's arguments have been raised and considered in the tribunal of first instance. To abandon that principle is to encourage the practice of "sandbagging": suggesting or permitting, for strategic reasons, that the trial court pursue a certain course, and later—if the outcome is unfavorable—claiming that the course followed was reversible error.

*Freytag v. C.I.R.,* 501 U.S. 868, 895 (1991) (Scalia, J., concurring) (emphasis added) (citations omitted).

¶ 25. In the federal district court's rulings in this case, the court emphasized the necessity of challenging in the lower court and then proceeding to appeal.

> In many respects, the state rehabilitation proceedings and the supplemental injunction are similar to federal bankruptcy proceedings and the automatic stay that goes into effect in bankruptcy. Insurance companies are barred from using bankruptcy to reorganize; their only remedy is a state court rehabilitation proceeding. As in bankruptcy, the efficacy of a rehabilitation proceeding is dependent upon the court's ability to stay actions by creditors that will interfere with the court's ability to manage the proceeding. When a claimant is affected by the stay, the claimant *challenges the effect in the bankruptcy court and if the result is unfavorable, it appeals.* The claimant does not file a separate proceeding in a separate court to determine whether the stay should apply, as the United States has done in this case.

*Nickel I,* 782 F. Supp. 2d at 752 (emphasis added).

¶ 26. It is implicit in the district court's statement that the general necessity of "challenging" in the lower court first and then appealing unfavorable results applies to the government. Certainly, federal courts have not carved any exception to that rule when the litigant is the United States.[13] For example, the Seventh Circuit

---

[13] The waiver rule is applied in a variety of federal contexts, as is illustrated by this comment from a case in United States Claims Court, made in the context of holding that a government agency had waived an issue by failing to raise it in the initial forum:

> Moreover, courts have continuously followed the general rule that an issue or argument not raised in the trial court, here before the special master, is waived. *Cedar Lumber, Inc. v. United States,* 857 F.2d 765, 767 (Fed. Cir. 1988) (finding that arguments not presented to the trial court (or initial adjudicatory forum) are deemed

Court of Appeals responded to the government's attempt, after having litigated the case on a different theory and then on remand "revived" a previously abandoned position, to claim that a defendant had waived an argument:

> But claims of waiver may themselves be waived, and *the United States did just that*—not in this court, but in the Supreme Court of the United States.
>
> Dunkel's petition for certiorari challenged this court's treatment of objectively unreasonable beliefs. The Solicitor General could have resisted this petition by arguing that Dunkel had not preserved the point. Instead he urged the Supreme Court to hold the case for whatever disposition *Cheek* made appropriate. The Court did so and has told us to review the case in light of *Cheek*. . . . *The government has missed its chance* to preclude Dunkel from receiving the benefits of *Cheek*.

*United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991) (citations omitted) (emphasis added).

¶ 27. The United States has argued that the usual rules concerning waiver do not apply here because its position was that the circuit court lacked subject matter jurisdiction under these circumstances, which is "a matter that can be raised at any time."[14]

---

waived on appeal); *see also, Borden v. Secretary of Health & Human Services,* 836 F.2d 4, 6 (1st Cir. 1987) (affirming decision of district court judge to refuse to consider an argument, which could have been, but was not presented before the magistrate); *Sigmon Fuel Co. v. Tennessee Valley Auth.,* 754 F.2d 162, 164–65 (6th Cir. 1985) (refusing to review an argument not raised in the district court in the interest of judicial economy and finality of judgments).

*McMillan v. Sec'y of Health & Human Serv.,* 26 Cl. Ct. 357, 358–59 (1992).

[14] While the United States expressed its willingness to provide supplemental briefing on the threshold question of

¶ 28. It is axiomatic that a circuit court is never without subject matter jurisdiction. "Circuit courts in Wisconsin are constitutional courts with general original subject matter jurisdiction over 'all matters civil and criminal.' Wis. Const. art. VII, § 8. Accordingly, a circuit court is never without subject matter jurisdiction." *Vill.*

---

whether failing to litigate the question in circuit court constituted waiver of the right to appeal, we believe that the record, petition for review, briefing, and oral arguments together set forth adequate grounds for us to make a determination on this issue. Its reasons for opposing a decision from this court using a waiver analysis were given in its petition for review (Pet. for Review at 43) (also discussed by respondents in Resp. to Pet. for Review at 12), in its brief and reply brief, and at oral argument. In each of those cases, the United States has consistently cited the same reasons that waiver should not apply to preclude its appeal. (United States' Br. at 6 n.3.) Counsel for the United States was questioned extensively at oral argument before this court concerning the question of waiver. The United States filed no motion requesting supplemental briefing or an extension of the word-limit rules for reply briefs. (It cited the limit of 3,000 words as a reason that it could not adequately respond to opposing counsel's waiver arguments.)

We note that both the petition for review and the response to the petition for review raised and addressed the issue of waiver (Pet. for Review at 43, Resp. to Pet. for Review at 12) and therefore there is no allegation by any party that the provisions of Wis. Stat. § 809.62(3)(d) were not followed here. Waiver was an alternative ground supporting the court of appeals' result. We resolve any potential conflict between the language of § 809.62(3)(d) (stating that a response "may contain ... [a]ny alternative ground supporting the court of appeals result ... ") and § 809.62(6) (referring to consideration of "an issue that was identified *in a petition*" (emphasis added)) in favor of consideration of the alternative ground addressed by the respondent in the response to the petition, and briefed and argued by the parties before this court.

*of Trempealeau v. Mikrut,* 2004 WI 79, ¶ 1, 273 Wis. 2d 76, 681 N.W.2d 190. In this particular situation, the proposition that the circuit court's jurisdiction was properly exercised here in the rehabilitation proceeding is certainly strengthened by the federal district court's two written decisions methodically analyzing and rejecting the United States' arguments to the contrary.

¶ 29. In the first case, the district court remanded the case to the circuit court on the Commissioner's motion after the United States had removed it. The district court concluded that the McCarran-Ferguson Act "can restrict the right of removal to federal court in cases in which a state statute governing insurance sets up a comprehensive framework for state rehabilitation proceedings to be conducted in state court and removal would impair that framework." *Nickel I,* 782 F. Supp. 2d at 748. It then turned to the question of whether abstention under *Burford* is appropriate and concluded that it was, on the grounds that federal court review of the United States' claims "would be disruptive of the state's rehabilitation goals and procedures" and of a rehabilitation proceeding that "has been in state court for roughly ten months and includes nearly 1,000 financial guaranty insurance policies insuring approximately $60 billion of financial obligations." *Id.* at 751. It observed that Wisconsin statutes provide for rehabilitation proceedings to occur in state court, with claims paid under the court's supervision and according to state priority statutes, and it considered the state court "uniquely qualified to hear these claims." *Id.* at 752. Further, it noted that the case, if allowed to remain in federal court, "has the potential for disrupting any rehabilitation plan developed by the Commissioner and approved by the state court." *Id.* It therefore decided that the principles of *Burford* require abstention "to

permit resolution of the United States' claims through the available mechanisms in the state rehabilitation proceedings," and it wasted no time remanding the case to the circuit court. *Id.*

¶ 30.  Within a month, the United States was back in the same district court, this time with a collateral attack seeking to enjoin the circuit court from putting into place the rehabilitation plan. The district court again rejected the arguments concerning jurisdiction:

> The United States attempts to avoid [a ruling based on reverse-preemption] by invoking sovereign immunity and arguing that the McCarran-Ferguson Act cannot preempt sovereign immunity. However, sovereign immunity does not provide an independent basis for jurisdiction . . . . As the Supreme Court explained in *United States v. Bank of New York & Trust Co.,* the United States may participate as a creditor in a state rehabilitation proceeding without raising sovereign immunity concerns.

*United States v. Wis. State Cir. Ct. for Dane Cnty. (Nickel II),* 767 F. Supp. 2d 980, 984 (citations omitted).

¶ 31.  The reasons for the rule requiring parties to raise issues in the circuit court or waive the right to raise them on appeal were clearly stated by this court in the cases cited above. The United States' approach in this case—declining to litigate issues in circuit court and then stating that it was filing a notice of appeal because it was seeking to "preserve its right to appeal" —contravenes without justification the accepted rule that issues not raised in the circuit court are deemed to be waived. We fail to see how the reasons underlying those principles apply with any less force when the United States government is a party. In any event, a party who has refused opportunities to challenge an

injunction when it had the opportunity to do so in the circuit court is not in a proper position to claim a narrow subject matter jurisdiction exception to circumvent the obstacle posed by the waiver rule.[15] As this case illustrates, to permit parties to do so would wreak havoc by allowing a party to sit out expensive litigation and then give it a free "do-over." Such an approach is simply unfair to the parties who at significant expense did participate in the proceedings, and it would be a pointless waste of scarce court system resources. It is inconsistent with the principle expressed in *Gove*, above: that it is "contrary to fundamental principles of justice and orderly procedure to permit a party to assume a certain position in the course of litigation"—here, refusing to take any part in the circuit court proceedings—and then seek relief from appellate courts for the result of that strategy. *Gove*, 148 Wis. 2d at 944. We therefore find no basis for exempting the United States from that rule under these circumstances.

¶ 32. We next turn to the United States' invocation of Wis. Stat. § 752.35. The United States argues that under Wis. Stat. § 752.35, the court of appeals may choose to consider its request to waive any procedural defect and in its discretion take jurisdiction of the case. It asks this court to remand this case to the court of appeals for that purpose.

¶ 33. The Commissioner urges that the United States be held to the trial strategy it chose and argues

---

[15] We have found no case in which a subject matter jurisdiction exception to the general waiver rule operated to permit an appeal where the party seeking to appeal refused to appear in the lower court proceedings. Here, the United States is challenging an injunction that it failed to challenge in the circuit court despite having had notice and the opportunity to do so.

that this case does not meet the criteria for reversal under Wis. Stat. § 752.35 given the fact that the United States "strategically circumvented" the circuit court. (Resp. Br. at 56.)

¶ 34. The United States seeks to have the court of appeals, in its discretion, exercise its power to overlook any procedural defects and take jurisdiction, pursuant to Wis. Stat. § 752.35. Wis. Stat. § 752.35 states:

> In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

This argument resembles the first argument in that the IRS is essentially seeking a way out of the corner it chose to put itself in. In a different case, the court of appeals was unmoved by an appeal to grant a new trial where it viewed the appeal as "another kick at the cat" rather than a genuinely needed opportunity to right a wrong. As the court of appeals said in *State v. Hubanks,* "[Wis. Stat. § 752.35] was not intended to vest this court with power of discretionary reversal to enable a defendant to present an alternative defense at a new trial merely because the defense presented at the first trial proved ineffective." 173 Wis. 2d 1, 28–29, 496 N.W.2d 96 (Ct. App. 1992). Here there was no trial. The United

74

States never appeared in the circuit court proceedings. It has acknowledged its strategic decision not to litigate in state courts. A party is entitled to make such a decision, but it is not entitled to reversal when its strategy has "proved ineffective." Discretionary reversal is not justified under these circumstances.

¶ 35.   We note, again, that the alternate ground for dismissal argued by the Commissioner was that the court of appeals had no jurisdiction. Finding no basis on which to depart from a bedrock principle of appellate practice, waiver, we affirm the court of appeals' decision to dismiss the appeal of the United States.[16]

## IV.   CONCLUSION

¶ 36.   What is inescapable in reviewing the record in this case is the sense that the United States almost begrudgingly took steps "to preserve its right to appeal" in only the most technical sense while, ironically, overlooking fundamental appellate principles establishing what parties must do to preserve that right: *raise their issues in the circuit court in the first instance.* The court of appeals dismissed the appeal on the basis of an unauthorized signature on the notice of appeal. In reaching our conclusion, we focus not on the signature, but on the fact that the notice of appeal itself was the only effort by the United States to involve itself with the circuit court. It did, as noted, attempt to remove

---

[16] Because this issue is dispositive of the appeal, we need not reach the other issues raised by the parties concerning whether the signature of a Department of Justice attorney without having sought pro hac vice admission is a defect in the filing, and if so, whether it is a fundamental defect (and cannot be remedied once the time to file a jurisdictional document has expired) or a technical defect that may, absent prejudice to other parties, be corrected.

this matter to federal court. Despite its apparent outrage at the injunction (in one filing to the court of appeals it stated, "[W]e are not aware of any other creditor that was so mistreated"), it remained on the sidelines while the rehabilitation was proceeding in the circuit court and chose not to raise its objections until after the final order was entered.

¶ 37. The United States conceded at oral argument that it made an intentional decision not to litigate any of the issues involved in the circuit court. Our case law is clear and consistent—failure to preserve issues means that they are waived. Applying well-established principles of law that apply equally to the government when it is a party, we hold that such a decision precludes the United States from pursuing relief in the court of appeals. We therefore affirm the decision of the court of appeals to dismiss the United States' appeal.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 38. DAVID T. PROSSER, J., did not participate.

¶ 39. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I agree with the majority opinion that many of our cases and many briefs use the words "forfeiture" and "waiver" interchangeably and carelessly. Majority op., ¶ 8 n.10. The court has observed that "[t]he case law is rife with confusion about the words 'waiver' and 'forfeiture.' " *State v. Ndina*, 2009 WI 21, ¶ 28, 315 Wis. 2d 653, 761 N.W.2d 612. Nevertheless, the two words represent two different important legal concepts. *See, e.g., Ndina*, 315 Wis. 2d 653, ¶¶ 28–35; *State v. Huebner*, 2000 WI 59, ¶ 11 n.2, 235 Wis. 2d 486, 611 N.W.2d 727.

¶ 40. This case is a forfeiture case. The party forfeited the right to raise a legal issue on appeal by silence in the trial court. Forfeiture is a doctrine relating to the preservation of an issue for appeal as a matter of right. The law the majority opinion relies on and the cases it cites are forfeiture cases even though the word "waiver" is frequently used.

¶ 41. This court's role is to develop and clarify the law. In the interest of clarity, I would have preferred the majority opinion to use the correct terminology. The fact that many courts and attorneys have long used imprecise terminology is not a good reason for us to continue to do so.

¶ 42. On another topic, the majority opinion properly calls attention to a "potential conflict" in our rules of appellate procedure between Wis. Stat. § (Rule) 809.62(6) and Wis. Stat. § (Rule) 809.62(3)(d) & (3m)(b)1. *See* majority op., ¶ 27 n.14.

¶ 43. Wisconsin Stat. § (Rule) 809.62(6) used to state that a petitioner could not raise issues not raised in the petition for review. The word "petitioner" was changed by the court to "parties" so that the subsection now prohibits "parties" from raising issues not raised in the petition for review. Yet subsections (3)(d) and (3m)(b) expressly authorize a responding party to raise issues not necessarily identified in the petition for review. I think it would be beneficial to the court and appellate counsel if interested persons, including the Judicial Council and the Appellate Section of the State Bar of Wisconsin, would consider whether a rule change is needed.

¶ 44. With these comments, I join the majority opinion.