COURT OF APPEALS
DECISION
DATED AND FILED

**January 4, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP349**

STATE OF WISCONSIN

Cir. Ct. No.  2019CV2231

IN COURT OF APPEALS
DISTRICT I

BRIDGETT LARKINS AND JEROME LARKINS,

PLAINTIFFS-APPELLANTS,

V.

DIANE BUILDING CORPORATION,

DEFENDANT-RESPONDENT,

ALDI, INC. GROUP INSURANCE WELFARE BENEFIT PLAN, ABC COMPANIES, DEF COMPANIES, GHI INSURANCE COMPANIES, JKL INSURANCE COMPANIES,

DEFENDANTS.

APPEAL from a judgment of the circuit court for Milwaukee County:  LINDSEY CANONIE GRADY, Judge. *Affirmed.*

Before Donald, P.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.    Bridgett and Jerome Larkins (collectively Larkins) appeal from the circuit court's grant of summary judgment in favor of Diane Building Corporation (DBC) and dismissing the Larkins' complaint alleging negligence and a violation of Wisconsin's Safe Place Statute, WIS. STAT. § 101.11 (2019-20).[1]    On appeal, the Larkins raise several arguments asserting that the circuit court erroneously granted summary judgment in favor of DBC.    Upon review, we affirm.

## BACKGROUND

¶2    Bridgett tripped and fell on a set of stairs located on a property owned by DBC and leased to the United States Postal Service (USPS) to operate as a post office.    On March 20, 2019, the Larkins filed a complaint alleging that DBC was negligent and violated WIS. STAT. § 101.11, Wisconsin's Safe Place Statute.[2]    The Larkins contended that the heel of Bridgett's shoe caught on loose riser material on an interior stairway, causing her to fall and sustain severe injuries.    The Larkins further contended that DBC was negligent and violated § 101.11 when it failed to maintain and repair the loose riser material on the stairs.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] The complaint also alleged a third cause of action for loss of society, companionship, and consortium.

¶3     The circuit court held several status conferences over the course of these proceedings, the first of which occurred on June 27, 2019.[3]   At this conference, the circuit court postponed entering a scheduling order to allow the parties to conduct discovery and determine if USPS would be joined to the case. When the parties returned for a subsequent status conference on October 15, 2019, DBC informed the circuit court that USPS would not be joined, and the circuit court advised the parties to continue with discovery efforts on the issue of notice. The circuit court additionally inquired whether DBC was considering a motion for summary judgment and informed DBC to notify the court of its decision by the next status conference scheduled for December 19, 2019.

¶4     In advance of the December status conference, the Larkins submitted a letter brief in which it argued that DBC could not delegate its duty under WIS. STAT. § 101.11 to USPS to maintain and repair the stairway.  In response, DBC submitted its own letter brief in which it argued that it lacked notice of the loose riser material, and it also outlined its arguments for a potential motion for summary judgment based on a lack of notice.   At the subsequent status conference, the circuit court addressed the parties' positions and set a briefing schedule for DBC's motion for summary judgment.

¶5     DBC filed a brief in support of its motion for summary judgment on February 13, 2020, and it argued that the Larkins could not prove that DBC had actual or constructive notice of the loose riser material on an interior stairway.  As explained in DBC's brief, USPS leased the premises since 1976 and operated the

---

[3] The record does not contain the transcripts, if any exist, for these status conferences. Thus, we rely on the parties for the details of what occurred at those status conferences.

property as a post office. Under the lease, USPS was required to repair and maintain the property. DBC then argued that it does not maintain a presence at the property, USPS has been responsible for all maintenance and repairs at the property for over four decades, and the Larkins have not established when the riser material became loose and created the unsafe condition. Thus, DBC contended that it did not have actual or constructive notice and that the Larkins' claims for negligence and a violation of WIS. STAT. § 101.11 failed as a matter of law.

¶6     In response, the Larkins argued that DBC's motion was premature as a result of incomplete and ongoing discovery.

¶7     The circuit court held the first hearing on DBC's motion for summary judgment on April 16, 2020.[4] Based on the argument raised by the Larkins, the circuit court took DBC's motion under advisement, provided the Larkins additional time to produce an expert, and allowed the parties an opportunity to supplement the summary judgment briefing after conducting further discovery.

¶8     Subsequently, the Larkins' expert, David Collette, submitted a report. In his report, Collette opined that the loose riser material was caused by a debonding process that occurred between the riser material and the stair. He further opined that this debonding process would "not occur quickly" and "would take at least 3-6 months." Collette described that the riser material was not properly installed, which created the condition for the debonding process to occur:

> [I]t appears the riser material was not installed so the
> material was underneath the nosing material but cut so the

---

[4] The Honorable Jeffrey A. Conen presided over the hearing held on April 16, 2020.

riser material ended at the bottom of the nosing material. The standard installation is to overlap the riser material underneath the nosing so that contaminants like water being tracked onto the stairway by pedestrians or cleaning chemicals used during the maintenance process don't get behind the riser material and negatively affect the adhesive and concrete.

Thus, Collette described:

The images show that the vertical concrete surface of the stairway, where the risers are attached, has degraded and is no longer a viable bonding surface. This surface degradation has affected either the concrete surface or the adhesive used to attach the riser to the point the riser has debonded. As the riser was not overlapped by the nosing, the riser can be seen to be falling away from the riser surface and into the space above the tread.

¶9 Ultimately, Collette provided in his report that "[DBC] would have constructive notice of the condition because the riser material, on the date of the incident, had been debonding for at least 3-6 months." He also added, "The cut risers show that there was prior knowledge of the hazard."

¶10 DBC deposed Collette, and subsequently filed a combined supplemental brief and motion to strike Collette's opinions on July 15, 2020. In its supplemental briefing and motion to strike, DBC highlighted that Collette admitted during his deposition that he had not performed a site visit, that he was not sure of the specific materials and adhesives that were used on the stairway, and that he could not provide an opinion as to the actual length of time that the riser material was loose. DBC further stated that Collette admitted during his deposition that the debonding process would be imperceptible. Thus, as relevant to its motion for summary judgment, DBC continued to maintain that it lacked notice, and the lack of notice was fatal to the Larkins' claims for negligence and a violation of WIS. STAT. § 101.11.

¶11 The Larkins also filed a supplemental brief in which it argued that Collette's opinion created a genuine issue of material fact that DBC had constructive notice of the loose riser material.

¶12 The circuit court held a second hearing on DBC's motion for summary judgment on October 27, 2020.[5] The circuit court found that there was no genuine issue of material fact as to whether DBC had notice of the loose riser material and granted DBC's motion. Following the circuit court's ruling, the Larkins raised a "concern" about the absence of a scheduling order and where that left the case, and the circuit court considered the Larkins' concern as raised out of order:

> I feel like you're asking an odd question out of order. So, when we started the motion and I said is everybody ready and does anybody have anything to add or is there anything before I render a decision to me that would have been a great time to say, "Judge, I haven't ever had a scheduling order, my discovery is incomplete, I don't want you to make a summary judgment decision because Judge Conen didn't clearly define the guidelines for the motion."

Thus, the circuit court informed the Larkins that the course of action would now be to file a motion for reconsideration or an appeal.

¶13 The Larkins now appeal.

**DISCUSSION**

¶14 Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

---

[5] Due to the retirement of the Honorable Jeffrey A. Conen, this case was assigned to the Honorable Lindsay Canonie Grady who presided over this hearing.

6

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). "Whether the circuit court properly granted summary judgment is a question of law that this court reviews de novo." *Racine Cnty. v. Oracular Milwaukee, Inc.*, 2010 WI 25, ¶24, 323 Wis. 2d 682, 781 N.W.2d 88 (citation omitted).

¶15 On appeal, the Larkins argue that the circuit court erred in granting DBC's motion for summary judgment. The Larkins raise four arguments: (1) the circuit court failed to follow the procedures for summary judgment set forth in WIS. STAT. § 802.08(1); (2) the circuit court failed to decide DBC's motion to strike Collette's opinions prior to deciding DBC's motion for summary judgment; (3) the circuit court erroneously found that no genuine issue of material fact existed that DBC did not have notice—either actual or constructive—of the loose riser material on the stairway; and (4) the circuit court erroneously failed to explicitly address the Larkins' negligence claim.

¶16 In response, DBC argues that the Larkins forfeited their procedural arguments, including that the circuit court failed to follow summary judgment procedures and that the circuit court failed to decide DBC's motion to strike Collette's opinions before addressing the motion for summary judgment. As to the Larkins' additional arguments, DBC argues that the circuit court properly found that there was no genuine issue of material fact that it did not have actual or constructive notice of the loose riser material. It also argues that the Larkins failed to raise an argument below as to actual notice and cannot raise an argument as to actual notice for the first time on appeal. Last, DBC argues that any failure to explicitly address the Larkins' negligence claim is irrelevant because the same notice requirement applies to both the negligence claim and the claim for a violation of WIS. STAT. § 101.11; therefore, DBC argues that the Larkins' failure

to demonstrate a genuine issue of material fact as to notice is fatal to their negligence claim, just as it is to their claim under § 101.11.

¶17    As explained below, we agree with DBC.  Thus, we conclude that the Larkins forfeited their procedural arguments and that the circuit court appropriately found that there was no genuine issue of material fact that DBC did not have actual or constructive notice of the loose riser material.  Accordingly, we conclude that the circuit court properly granted DBC's motion for summary judgment.

¶18    We first address the procedural arguments.  Second, we address DBC's argument that there is no genuine issue of material fact that DBC lacked notice of the loose riser material and the effect of the lack of notice on the Larkins' negligence claim.

### I.    Forfeiture

¶19    "It is a fundamental principle of appellate review that issues must be preserved at the circuit court to be raised on appeal as a matter of right."  *Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45 n.21, 327 Wis. 2d 572, 786 N.W.2d 177.  "If the issue is not preserved, an appellate court may consider the issue forfeited."  *Id.*  "Raising issues at the trial court level allows the trial court to correct or avoid the alleged error in the first place, eliminating the need for appeal."  *In re Ambac Assurance Corp.*, 2012 WI 22, ¶22, 339 Wis. 2d 48, 810 N.W.2d 450 (citation omitted).  "It also gives both parties and the trial judge notice of the issue and a fair opportunity to address the objection."  *Id.* (citation omitted).

¶20    In this case, the Larkins forfeited their two procedural arguments by failing to raise them below.

¶21    First, the Larkins forfeited their argument that the circuit court failed to follow the procedures found in WIS. STAT. § 802.08(1) when it addressed DBC's motion more than eight months after the Larkins filed their complaint, and without a scheduling order providing an alternative deadline. *See* § 802.08(1) ("A party may, within 8 months of the filing of a summons and complaint or within the time set in a scheduling order under s. 802.10, move for summary judgment on any claim[.]").  As DBC correctly asserts, the Larkins had several opportunities to raise an argument about the timeliness of DBC's motion under § 802.08(1) at the status conferences and in the briefing, yet the Larkins failed to do so.  Indeed, the Larkins were on notice that DBC was contemplating a motion for summary judgment by the October 15, 2019 status conference, and the Larkins were officially informed of DBC's intention at the December 19, 2019 status conference.

¶22    Yet, the Larkins sat silent at both status conferences about any concern over the timeliness of DBC's motion for summary judgment, and when the Larkins filed their response, they pursued an argument that DBC's motion was premature based on a lack of discovery.  Then, when presented with the opportunity for additional briefing, the Larkins pursued an argument that Collette's opinion created a genuine issue of material fact as to constructive notice.  Therefore, because the Larkins failed to raise any argument below based on WIS. STAT. § 802.08(1) and had multiple opportunities to do so, we conclude that the Larkins forfeited any argument that the circuit court erroneously granted DBC's motion for summary judgment as a result of DBC's motion being untimely under § 802.08(1).

9

¶23     The Larkins similarly failed to raise any argument below about the circuit court ruling on DBC's motion for summary judgment prior to ruling on DBC's motion to strike Collette's opinions.  In fact, at the time that the circuit court granted DBC's motion for summary judgment, the only "concern" the Larkins' counsel raised dealt with where the case stood following the circuit court's granting of DBC's motion for summary judgment.[6]  The court held that it was too late to raise an issue of where the case stood after it granted the motion for summary judgment.  As a result, the circuit court was never presented with any opportunity to address any objection to the court deciding DBC's motion for summary judgment prior to addressing DBC's motion to strike Collette's opinions, or correct or avoid any error in the order in which it addressed DBC's motions.  *See* **In re Ambac Assurance Corp.**, 339 Wis. 2d 48, ¶22.  Thus, we conclude that the Larkins also forfeited any argument premised on the circuit court addressing DBC's motion for summary judgment prior to addressing DBC's motion to strike Collette's opinions because the Larkins failed to raise this argument below.[7]

---

[6] As noted above, after the circuit court granted DBC's motion for summary judgment dismissing the Larkins' claims against DBC, the Larkins' counsel raised a "concern" about the absence of a scheduling order and where that left the case.  The court explained that it granted the motion for summary judgment, which meant that the claims against DBC were dismissed and DBC was dismissed from the case.  It stated that it was only addressing the claims against DBC and it was not addressing any claims against any other defendants if the Larkins had such claims.

[7] Nonetheless, we observe that the circuit court did consider Collette's opinion in finding that no genuine issue of material fact existed.  The circuit court stated, "[W]hat the [c]ourt will ultimately find is that even with the expert testimony, there isn't an issue as to any material fact that would establish the quantum of time."  Therefore, we also conclude that the order in which the circuit court addressed DBC's motions is irrelevant.

## II.     Notice

¶24     The Larkins' remaining arguments require us to address whether the circuit court erroneously found that there was no genuine issue of material fact that DBC lacked either actual or constructive notice of the loose riser material.[8]

¶25     As a threshold matter, we address DBC's argument that the Larkins forfeited any argument that DBC lacked actual notice by failing to raise the argument below and pursuing an argument based on actual notice for the first time on appeal.  Here, we again agree with DBC.  The Larkins plainly pursued an argument below that Collette's opinion created a genuine issue of material fact as to whether DBC had constructive notice of the loose riser material.  Nowhere in its brief did it pursue an argument that DBC had actual notice of the loose riser material.  Thus, by failing to pursue an argument below that DBC had actual notice and raising this argument for the first time on appeal, the Larkins have forfeited this argument.  *See Schill*, 327 Wis. 2d 572, ¶45 n.21.

¶26     Accordingly, we turn to whether DBC had constructive notice of the loose riser material, and we conclude that the circuit court properly found that there was no genuine issue of material fact that DBC lacked constructive notice of the loose riser material.

¶27     Under the safe place statute, a property owner is only liable for an unsafe condition if it has actual or constructive notice of the condition.  *See*

---

[8] In addressing the Larkins' remaining arguments, we note that our review is *de novo*. *See **Racine Cnty. v. Oracular Milwaukee, Inc.**, 2010 WI 25, ¶24, 323 Wis. 2d 682, 781 N.W.2d 88 (citation omitted).  Thus, we review independently of the circuit court whether a genuine issue of material fact exists, and we do not review the circuit court's finding that no genuine issue of material fact exists for error.

*Barry v. Employers Mut. Cas. Co.*, 2001 WI 101, ¶¶1, 3, 245 Wis. 2d 560, 630 N.W.2d 517. As noted above, this case turns on the issue of constructive notice of an allegedly unsafe condition on a stairway caused by loose riser material.

¶28 "Constructive notice is a fiction that attributes knowledge of a fact to a person 'as if he had actual notice or knowledge although in fact he did not.'" *Kochanski v. Speedway SuperAmerica, LLC*, 2014 WI 72, ¶32, 356 Wis. 2d 1, 850 N.W.2d 160 (citation omitted). "[T]he general rule is that an employer or owner is deemed to have constructive notice of a defect or unsafe condition when that defect or condition has existed a long enough time for a reasonably vigilant owner to discover and repair it." *Id.*, ¶33 (citation omitted). "Ordinarily, constructive notice requires evidence as to the length of time that the condition existed." *Id.* (citation omitted).[9]

¶29 Importantly, here, we reject the Larkins' contention that Collette's opinion creates a genuine issue of material fact because his opinion does not establish the length of time that the riser material was actually loose. Without any information showing how long the riser material was actually loose, DBC cannot be charged with constructive notice. *See id.*; *see also Kaufman v. State St. Ltd. P'ship*, 187 Wis. 2d 54, 65, 522 N.W.2d 249 (Ct. App. 1994).

---

[9] We do not address the Larkins' argument that this case meets an exception to the time requirement because the Larkins failed to develop this argument below. *See Schill v. Wisconsin Rapids Sch. Dist.*, 2010 WI 86, ¶45 n.21, 327 Wis. 2d 572, 786 N.W.2d 177. We also consider this argument undeveloped on appeal. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). We nonetheless note that this exception is a narrow one, making it unlikely that the exception would apply to this case. *See Megal v. Green Bay Area Visitor & Convention Bureau, Inc.*, 2004 WI 98, ¶13, 274 Wis. 2d 162, 682 N.W.2d 857.

¶30 In his report, Collette opined that the debonding process on the stairway would have taken at least three to six months. However, in a later deposition, Collette admitted that the debonding process is imperceptible. Thus, Collette's statement that the debonding process would take three to six months merely communicates how long an imperceptible debonding process would have taken—it does not tell us the length of time the riser material on the stairway was actually loose and falling away from the stair, creating the allegedly hazardous condition. In fact, the Larkins themselves recognize that Collette's report fails to provide an actual length of time because, as noted, the Larkins attempt to rely on an exception to the time requirement for establishing constructive notice, as opposed to arguing that the riser material was loose for a specific length of time. Thus, Collette's opinion clearly fails to establish the length of time of the actual existence of the allegedly hazardous condition that caused Bridgett's fall down the stairs.

¶31 Without an opinion as to the length of time that the riser material was loose on the stairway creating the condition that the Larkins argue caused Bridgett's fall, we are left to speculate when the condition actually existed following an imperceptible debonding process. "Speculation as to how long the unsafe condition existed and what reasonable inspection would entail are insufficient to establish constructive notice." *Kochanski*, 356 Wis. 2d 1, ¶36. Consequently, we conclude that the circuit court properly found that there was no

genuine issue of material fact as to whether DBC had constructive notice of the loose riser material.[10]

¶32     Last, without a genuine issue of material fact regarding notice, we conclude that the circuit court's failure to specifically mention the Larkins' negligence claim is irrelevant. Whether DBC had notice of the loose riser material is an element of both the negligence claim and the claim under WIS. STAT. § 101.11. *See **Barry***, 245 Wis. 2d 560, ¶¶1, 3 (safe-place statute); *see also **Wallow v. Zupan***, 35 Wis. 2d 195, 200, 150 N.W.2d 329 (1967) (negligence). Thus, the circuit court's failure to explicitly mention the Larkins' negligence claim is irrelevant because a finding that no genuine issue of material fact exists is fatal to the negligence claim as well as the claim under § 101.11.

¶33     On this point, we further observe that the Larkins treated the issue of notice as applicable to both of their claims for negligence and a violation of WIS. STAT. § 101.11 in their briefing below, and they failed to raise any argument below that the notice element did not apply to their negligence claim. They also failed to raise any argument at the second hearing on DBC's motion for summary judgment that the failure to separate their negligence claim from their claim under § 101.11 was problematic. Thus, the Larkins have also forfeited any argument regarding the circuit court's failure to explicitly address their negligence claim by failing to raise the argument below. *See **Schill***, 327 Wis. 2d 572, ¶45 n.21.

---

[10] The Larkins further point to evidence that portions of the riser material appear to have been cut away, but they similarly do not provide a timeline of when the riser material was cut or who cut it. Therefore, this argument still fails to provide the length of time that the riser material was loose.

¶34 Accordingly, we conclude that the circuit court properly granted DBC's motion for summary judgment, and we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.