# SUPREME COURT OF WISCONSIN

| CASE NO.: | 2018AP116 |
| --- | --- |

| COMPLETE TITLE: | Roger Choinsky, Gary Finn, William Gay, David Kliss, Carol |
| --- | --- |
| | Rudebeck and Janice Weinhold, |
| | Plaintiffs, |
| | v. |
| | Employers Insurance Company of Wausau and Wausau Business |
| | Insurance Company, |
| | Intervenors-Respondents, |
| | Germantown School District Board of Education and |
| | Germantown School District, |
| | Defendants-Appellants-Petitioners. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 2019 WI App 12, 386 Wis. 2d 285,926
N.W.2d 196 - Published

| OPINION FILED: | February 13, 2020 |
| --- | --- |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 28, 2019 |

| SOURCE OF APPEAL: | |
| --- | --- |
| COURT: | Circuit |
| COUNTY: | Washington |
| JUDGE: | Todd K. Martens |

JUSTICES:

REBECCA GRASSL BRADLEY, J., delivered the majority opinion of the Court, in which ROGGENSACK, C.J., ANN WALSH BRADLEY, ZIEGLER, and DALLET, JJ., joined. KELLY, J., filed a dissenting opinion.

NOT PARTICIPATING:

HAGEDORN, J., did not participate.

ATTORNEYS:

For the defendants-appellants-petitioners, there were briefs filed by *Kirk D. Strang, Jenna E. Rousseau* and *Strang, Patteson, Renning, Lewis & Lacy, S.C.,* Madison and Green Bay. There was an oral argument by *Kirk D. Strang*.

For the intervenors-respondents, there was a brief filed by *Thomas R. Schrimpf* and *Hinshaw & Culbertson LLP*, Milwaukee, and *Todd G. Smith* and *Godfrey & Kahn, S.C.,* Madison. There was an oral argument by *Thomas R. Schrimpf*.

For amicus Wisconsin Insurance Alliance, a brief was filed by *Robert I. Fassbender* and *Great Lakes Legal Foundation*, Madison.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.  2018AP116
 (L.C. No.  2013CV527)

STATE OF WISCONSIN        :        IN SUPREME COURT

**Roger Choinsky, Gary Finn, William Gay, David Kliss, Carol**

**Rudebeck and Janice Weinhold,**

       **Plaintiffs,**

   **v.**

**Employers Insurance Company of Wausau and Wausau Business**

**Insurance Company,**

       **Intervenors-Respondents,**

**Germantown School District Board of Education and**

**Germantown School District,**

       **Defendants-Appellants-Petitioners.**

**FILED**

**FEB 13, 2020**

Sheila T. Reiff
Clerk of Supreme Court

REBECCA GRASSL BRADLEY, J., delivered the majority opinion of the Court, in which ROGGENSACK, C.J., ANN WALSH BRADLEY, ZIEGLER, and DALLET, JJ., joined.  KELLY, J., filed a dissenting opinion.

HAGEDORN, J., did not participate.

REVIEW of a decision of the Court of Appeals.  *Affirmed*.

¶1 REBECCA GRASSL BRADLEY, J. The Germantown School District Board of Education and Germantown School District (collectively, the "School District") seek review of a court of appeals decision[1] affirming the circuit court's order and judgment,[2] which denied the School District's motion for attorney fees. The School District argues that its insurers, Employers Insurance Company of Wausau and Wausau Business Insurance Company (collectively, the "Insurer"), breached the duty to defend the School District in a lawsuit brought by retired employees; therefore, the School District claims its Insurer should pay, as a remedy for the breach, all the attorney fees incurred by the School District.[3]

¶2 This case presents an insurance coverage duty-to-defend issue of first impression: does an insurer breach its duty to defend its insured when it denies a tendered claim and then follows the judicially preferred procedure of filing a motion to intervene

---

[1] Choinsky v. Germantown Sch. Dist. Bd. of Educ., 2019 WI App 12, 386 Wis. 2d 285, 926 N.W.2d 196.

[2] The Honorable James G. Pouros of the Washington County Circuit Court presided until January 2015 when the case was reassigned to the Honorable Todd K. Martens.

Two of the dates in the circuit court's November 30, 2017 Order for Judgment and Judgment (Record item No. 590) are incorrect. The year "2017" in the second and third lines should be "2016." Both the coverage trial and the special verdict resulting therefrom occurred in April 2016, not April 2017.

[3] The final circuit court order and judgment from which the School District appealed addressed only attorney fees with respect to coverage, not disputed fees relating to the liability defense.

2

and stay the underlying lawsuit pending a coverage determination, which is ultimately resolved in the insured's favor?  Additionally, we consider the insurer's obligations in order to avoid breaching its duty to defend when the circuit court denies the motion to stay.[4]

¶3   We conclude that when an insurer initially denies a tendered claim but promptly proceeds with one of our judicially preferred methods for determining coverage, it does not breach its duty to defend.  If a circuit court denies any part of an insurer's motion to bifurcate the coverage issue from the underlying liability lawsuit and stay the latter, causing an insured to simultaneously defend the liability suit and litigate coverage against the insurer, an insurer must defend its insured in the liability lawsuit, retroactive to the date of tender, under a reservation of rights, until a court decides the coverage issue.  Because the School District's Insurer followed this procedure, the Insurer did not breach its duty to defend and the Insurer is not responsible for any of the attorney fees the School District paid for the coverage dispute.  See Newhouse v. Citizens Sec. Mut. Ins. Co., 176 Wis. 2d 824, 832-39, 501 N.W.2d 1 (1993) (when an insurer

---

[4] We use "coverage" to refer to the coverage issue and "liability" to refer to the resolution of the underlying lawsuit that triggered the insurance issue.  This terminology is frequently used in insurance cases, particularly when referring to bifurcating the "coverage" determination from the "liability" resolution.  We note, however, that "liability" may also be referred to as the "merits" issue.  "Merits" refers to a determination of the underlying lawsuit, i.e., resolving the question of the insured's liability to the plaintiff.

3

follows a judicially preferred method, the insurer "runs no risk of breaching its duty to defend"); see also Carney v. Village of Darien, 60 F.3d 1273, 1277 (7th Cir. 1995) ("[A]n insurer who properly follows the procedure recommended by the Wisconsin Supreme Court of first seeking a determination on coverage prior to the liability issue, has not breached its duty to defend."); Reid v. Benz, 2001 WI 106, ¶¶26-28, 32-35, 245 Wis. 2d 658, 629 N.W.2d 262 (explaining an award of coverage attorney fees is limited to cases in which insurer breaches duty to defend and equity demands a fee-shifting).

¶4 In reaching this decision, we reject the School District's claims that: (1) its Insurer's initial outright denial of coverage followed by a delayed decision to defend under a reservation of rights constituted a breach of its duty to defend; (2) its Insurer's delay in paying liability fees and its failure to reimburse the School District for the entire amount it paid to its liability lawyer constitutes a breach of its duty to defend; and (3) the circuit court's assessment of whether the Insurer breached its duty to defend is subject to the four-corners rule.

¶5 We hold: (1) the Insurer's initial denial of coverage did not breach its duty to defend because the Insurer promptly followed a judicially-approved method to resolve the coverage dispute; further, it defended the School District upon denial of the stay motion, agreeing to reimburse the School District for liability attorney fees retroactive to the date of the tender; (2) a delay in payment of liability attorney fees alone does not mean

4

an insurer breached its duty to defend and an insurer is obligated to pay only <u>reasonable</u> attorney fees; and (3) the four-corners rule applies in determining whether a duty to defend exists but does not preclude a court's consideration of whether the insurer unilaterally denied coverage or whether it chose a judicially preferred method of resolving a coverage dispute, in assessing whether an insurer breached its duty to defend. We affirm the decision of the court of appeals.

## I. BACKGROUND

¶6 In July 2013, six retired Germantown School District employees, as representatives in a class action, filed suit against the School District alleging four causes of action: (1) breach of contract, (2) breach of implied contract, (3) breach of the duty of good faith and fair dealing, and (4) promissory estoppel. The lawsuit arose from the School District's 2012 decision to discontinue group long-term care ("LTC") insurance for its current employees. This decision caused the retired employees to lose their LTC insurance benefit. The retirees' Complaint repeatedly describes the School District's decision as a "unilateral action" to terminate the insurance benefit, and alleges that "Defendants' act of discontinuing LTC benefits for active employees caused termination" of LTC insurance benefits for retirees. The Complaint further asserts the School District "by their unilateral acts terminated the group LTC policy for Plaintiffs in intentional and willful disregard of Plaintiffs' rights." In the Complaint's general allegations of fact, the retirees alleged that the School

5

District "knew or should have known" that eliminating the LTC insurance for current employees would cause the retirees to lose LTC coverage.

¶7   After being served with the lawsuit, the School District tendered the defense of the suit to its Insurer.  About a week later, the Insurer sent a letter to the School District denying the tender, explaining that the policies covered the School District for negligent acts, not deliberate acts, and because the Insurer determined the lawsuit did not allege negligence, there was no coverage under the insurance policies.  The letter asked the School District to advise whether it agreed with this coverage determination and whether the School District would agree to withdraw its tender.  If the School District disagreed, or if the Insurer did not hear anything by August 20, 2013, the letter explained that the Insurer would file a motion in circuit court to obtain a coverage determination.

¶8   On August 29, 2013, after the School District notified the Insurer that it would not withdraw the tender, the Insurer filed a motion asking the circuit court to allow the Insurer to intervene in the lawsuit, and requested that the circuit court bifurcate the liability and coverage issues and stay the liability lawsuit until coverage could be resolved. About three weeks after the motion was filed, the circuit court held a hearing on the motion, but it did not render a decision until three months later. On December 12, 2013, the circuit court granted the Insurer's

6

motion to intervene and bifurcate, but it denied the motion to stay the liability proceedings.[5]

¶9 One week after the decision, the Insurer filed its own Complaint for declaratory judgment asking the circuit court for a declaration that the Insurer had no duty to defend or indemnify the School District. On December 30, 2013, the Insurer filed a motion for summary judgment asking the circuit court to rule it had no duty to defend or indemnify. In this motion, the Insurer notified the circuit court that because the stay motion was denied, the Insurer decided to provide a full defense for its insured until coverage could be resolved. Two weeks after that filing, the Insurer sent a letter directly to the School District saying it would provide a full defense under a reservation of rights. The Insurer agreed to pay the fees the Insured incurred in defending the liability lawsuit, retroactive to the date of the tender.

¶10 The January 2014 letter advised that the School District could continue to use the attorney it had hired as long as the attorney and the Insurer could agree on "hourly rates." The Insurer started paying the School District's attorney directly in

---

[5] The circuit court denied the stay based on "the unique factual background of this particular case (as compared to other reported insurance coverage cases)" because it involved elimination of the retired employees LTC benefits, which, if needed, could have caused "personal financial devastation." As it turned out, the coverage trial preceded the liability trial by over a year even though the circuit court denied the requested stay. The coverage trial resulted in a finding in favor of coverage and the liability trial resulted in no liability.

May 2014 and reached an agreement on previously paid attorney fees by June 2014.

¶11 In July 2014, the circuit court denied the Insurer's motion for summary judgment because the facts required further development. In October 2014, the Insurer filed a second motion for summary judgment seeking a declaration that it did not owe a duty to defend or indemnify. In June 2015, the circuit court denied the Insurer's second motion for summary judgment. The circuit court explained it could not decide as a matter of law whether the individuals who made the decision to terminate LTC insurance for current employees acted negligently or intentionally with respect to the impact that decision would have on retired employees. As a result, this issue was presented to a jury at the coverage trial in April 2016. The jury found that the School District decisionmakers acted negligently; based on that finding, the circuit court concluded the Insurer had a duty to defend based on the Complaint's allegation that the School District "should have known" the adverse effect its decision to eliminate LTC insurance for current employees would have on its retired employees. The School District's motion after verdict asked for an award of attorney fees, but the circuit court delayed deciding the attorney fees issue to afford the parties the opportunity to resolve it on their own. The Insurer attempted to appeal the coverage decision, but the appeal was dismissed by the court of appeals because the circuit court had not yet decided whether the Insurer owed the School District additional attorney fees.

8

¶12 The case proceeded to trial on liability in June 2017 and the jury returned a verdict in favor of the School District. The parties then resurrected the unresolved attorney fees issue and the circuit court issued a written decision on November 3, 2017. In that order, the circuit court explained that because the Insurer followed a judicially preferred approach to the coverage dispute, it did not breach its duty to defend; therefore, the School District was not entitled to recover any attorney fees it expended in establishing coverage. The November 3rd order does not address any unpaid attorney fees related to liability. The School District did not seek clarification of the circuit court's order, nor did it object to the proposed Order for Judgment and Judgment the Insurer's attorney submitted to the circuit court. On November 30, 2017, the circuit court entered its Order for Judgment and Judgment, attaching its November 3, 2017 written order on attorney fees. The School District appealed from the November 30th and November 3rd circuit court orders, and the court of appeals affirmed the circuit court. The School District then petitioned this court for review and we granted the petition.

## II. STANDARD OF REVIEW

¶13 This case requires the court to interpret an insurance contract to determine whether the Insurer breached its duty to defend; this presents a question of law reviewed de novo. Water Well Sols. Serv. Grp., Inc. v. Consolidated Ins. Co., 2016 WI 54, ¶12, 369 Wis. 2d 607, 881 N.W.2d 285 (citations omitted). Whether an Insurer should pay for its insured's attorney fees relating to

9

establishing coverage is also reviewed independently. Reid, 245 Wis. 2d 658, ¶12.

## III. ANALYSIS

### A. Insurance Law

¶14 This court has provided much guidance on an insurer's duty to defend and how an insurer can avoid breaching that duty. See, e.g., Water Well, 369 Wis. 2d 607, ¶¶15-17; Olson v. Farrar, 2012 WI 3, ¶29, 338 Wis. 2d 215, 809 N.W.2d 1; Newhouse, 176 Wis. 2d at 832-39; Elliott v. Donahue, 169 Wis. 2d 310, 317-21, 485 N.W.2d 403 (1992). It is the breach of the duty to defend and not the existence of the duty itself that triggers equitable fee-shifting in insurance cases. See Reid, 245 Wis. 2d 658, ¶37 (explaining that coverage attorney fees were awarded in Elliott as a "matter of equity"); see generally Elliott, 169 Wis. 2d 310.[6] In Elliott, we held that an insured was entitled to recover from its insurer any attorney fees the insured incurred to establish coverage if the insurer breached its duty to defend. Elliott, 169 Wis. 2d at 314, 318, 322. Elliott recognized that the attorney fees awarded must be "reasonable" and remanded the matter to the circuit court "for a determination of the reasonable attorney fees incurred." Id. at 325; see also Newhouse, 176 Wis. 2d at 837-38

---

[6] In Elliott v. Donahue, we held the insurer's initial denial was not a breach of its duty to defend. 169 Wis. 2d 310, 318, 485 N.W.2d 403 (1992). The insurer's breach of its duty to its insured was the insurer's failure to move for bifurcation and a stay so that coverage could be decided before the insured incurred attorney fees at the liability trial. Id.

(explaining that a breach of the duty to defend results in damages naturally flowing from that breach).

¶15  Since our decision in Elliott, this court established several judicially preferred procedures for an insurer to follow in order to avoid breaching its duty to defend, which will avert exposure to an Elliott/Newhouse fees award against it.  These judicially preferred methods are designed to strike a fair balance between the respective interests of insurers and insureds. Insureds who pay for insurance policies should receive a defense paid by its insurer whenever facing a lawsuit that "appear[s] to give rise to coverage" under the policy.  Olson, 338 Wis. 2d 215, ¶30.  On the other hand, if a complaint does not allege a claim covered under the policy, the insurer should not be obligated to defend its insured.  Water Well, 369 Wis. 2d 607, ¶¶32-40.  If "a claim is 'fairly debatable,' the insurer is entitled to debate it[.]"  Anderson v. Continental Ins. Co., 85 Wis. 2d 675, 691, 271 N.W.2d 368 (1978).

¶16  The duty to defend arises when an insurer is served with a complaint that "alleges facts that, if proven, would constitute a covered claim" or when an insured who is served with a complaint alleging a covered claim tenders the defense to its insurer.  See Estate of Sustache v. Am. Family Mut. Ins. Co., 2008 WI 87, ¶27,

11

311 Wis. 2d 548, 751 N.W.2d 845 (quoted sources omitted).[7] The "four corners" rule is used to determine whether the complaint alleges a covered claim, by comparing the words in the complaint to the language of the entire insurance policy. See Water Well, 369 Wis. 2d 607, ¶15. The allegations of the complaint "must state or claim a cause of action for the liability insured against or for which indemnity is paid in order for the suit to come within any defense coverage of the policy[.]" Grieb v. Citizens Cas. Co., 33 Wis. 2d 552, 557-58, 148 N.W.2d 103 (1967). If a complaint alleges a covered claim, an insurer must provide a defense to its insured or follow one of the judicially preferred methods to resolve any dispute over coverage. Water Well, 369 Wis. 2d 607, ¶27; Sustache, 311 Wis. 2d 548, ¶¶25-26. An insurer is obligated to defend "only if it could be held bound to indemnify the

---

[7] Wisconsin cases have been rather imprecise in pronouncing the test that triggers coverage. Some express the test as whether a complaint alleges an "arguably" covered claim, see, e.g., Fireman's Fund Ins. Co. v. Bradley Corp., 2003 WI 33, ¶20, 261 Wis. 2d 4, 660 N.W.2d 666 ("duty to defend is triggered by arguable, as opposed to actual, coverage"), and others discuss whether coverage under the allegations in the complaint is "fairly debatable," see, e.g., Red Arrow Prod. Co., Inc. v. Employers Ins. of Wausau, 2000 WI App 36, ¶¶16-19, 233 Wis. 2d 114, 607 N.W.2d 294. At least one Wisconsin insurance law treatise suggests the "fairly debatable" language "should not apply when determining whether a complaint triggers coverage." Rather, the "fairly debatable" test relates solely to assessing bad faith, "or, in the right circumstances, a breach-of-contract claim." Arnold P. Anderson, Wisconsin Insurance Law § 7.30-7.33 (6th ed. 2013) (noting this term first appeared in the "bad-faith case of Anderson v. Continental Ins. Co., 85 Wis. 2d 675, 693, 271 N.W.2d 368 (1978), which concluded there was no bad faith in denying claim if it was 'fairly debatable.'").

insured[.]"  Nichols v. Am. Employers Ins. Co., 140 Wis. 2d 743, 747, 412 N.W.2d 547 (Ct. App. 1987) (quoting Grieb, 33 Wis. 2d at 558).  All doubts about the duty to defend must be resolved in favor of the insured.  Fireman's Fund Ins. Co. v. Bradley Corp., 2003 WI 33, ¶20, 261 Wis. 2d 4, 660 N.W.2d 666 (courts "resolve any doubt regarding the duty to defend in favor of the insured"); Sustache, 311 Wis. 2d 548, ¶21; Liebovich v. Minnesota Ins. Co., 2008 WI 75, ¶18, 310 Wis. 2d 751, 751 N.W.2d 764; Sola Basic Indus., Inc. v. United States Fid. & Guar. Co., 90 Wis. 2d 641, 646-47, 280 N.W.2d 211 (1979).  In contrast, if the complaint does not allege a covered claim, the insurer has no obligations under the policy.  See generally Menasha Corp. v. Lumbermens Mut. Cas. Co., 361 F. Supp. 2d 887, 891 (E.D. Wis. 2005).  Insurers should not have to defend an insured if a complaint does not allege any claims covered under the insurance policy.  See, e.g., Water Well, 369 Wis. 2d 607, ¶¶32-40 (holding insurer had no duty to defend and did not breach its duty to defend by unilaterally refusing to defend when the complaint contained no allegations covered by the policy).

¶17  Of course, insurers and insureds do not always agree as to whether a complaint alleges covered claims.  For those situations, we have articulated several judicially preferred procedures to follow and have repeatedly held that when an insurer follows one of those approaches, it is not at risk of breaching its duty to defend.  See, e.g., Newhouse, 176 Wis. 2d at 836 (when an insurer follows a judicially preferred method, the insurer "runs

13

no risk of breaching its duty to defend"); see also Carney, 60 F.3d at 1277 ("[A]n insurer who properly follows the procedure recommended by the Wisconsin Supreme Court of first seeking a determination on coverage prior to the liability issue, has not breached its duty to defend."). Our cases identify four judicially preferred procedures:

- Defend under a reservation of rights;
- Defend under a reservation of rights but seek a declaratory judgment on coverage;
- Enter into a nonwaiver agreement under which the insurer defends the insured but the insured acknowledges that the insurer has the right to contest coverage;
- File a motion with the circuit court requesting a bifurcated trial on coverage and liability and a stay of the proceedings on liability until coverage is determined.

Water Well, 369 Wis. 2d 607, ¶27.

¶18 Under the first three options, the insurer elects to defend the insured under a reservation of rights and provide a defense while the issue of coverage is resolved. Provided the circuit court stays the liability proceedings, the fourth option does not require the insurer to defend the insured pending resolution of the coverage issue. Rather, a successful motion to stay halts the liability case so that the insured does not incur attorney fees litigating liability until a coverage determination is made by the circuit court. With all four judicially preferred

14

methods, the goal is to protect the insured from having to simultaneously pay to defend itself in a liability trial while litigating coverage against its insurer.

¶19 This case presents a problem with the fourth option when the circuit court denies the bifurcation or stay motion, resulting in the insured defending itself for a period of time on both liability and coverage. We remedy that problem by clarifying the bifurcation/stay procedure: if a circuit court denies bifurcation or a stay of the liability case, in order to protect itself from being found in breach of its duty to defend, the insurer must defend its insured under a reservation of rights so that the insured does not have to pay to defend itself on liability and coverage at the same time.[8] Additionally, the insurer must reimburse its insured for reasonable attorney fees expended on a liability defense, retroactive to the date of tender.

¶20 Although we recognize this court has not previously been presented with this particular factual scenario, the well-established judicially preferred procedures nevertheless apply because the controlling legal principle is not new. In Mowry v. Badger State Mut. Cas. Co., we said:

> An insurer may need to provide a defense to its insured when the separate trial on coverage does not precede the trial on liability and damages . . . . Thus, we have noted that an insurer may be required to furnish a free

---

[8] See Elliott, 169 Wis. 2d at 317-21; Mowry v. Badger State Mut. Cas. Co., 129 Wis. 2d 496, 528-29, 385 N.W.2d 171 (1986); Barber v. Nylund, 158 Wis. 2d 192, 197-98, 461 N.W.2d 809 (Ct. App. 1990).

15

>defense to its insured prior to the determination of coverage.

129 Wis. 2d 496, 528-29, 385 N.W.2d 171 (1986) (citation omitted). Although the facts and procedural history in Mowry differ from this case, Mowry alerted insurers to this additional precondition to avoiding a breach of the duty to defend, which arises when the circuit court denies a motion to bifurcate or stay. Of course, just as the insurer can unilaterally deny coverage without following any of the judicially preferred approaches, the insurer can decline to provide this retroactive defense if the circuit court denies the bifurcation or stay motion. However, an insurer that does not follow a judicially preferred procedure, or maintains its position when a stay motion is denied, runs the risk of breaching its duty to defend if coverage is later established.

## B.  Application

¶21  We now turn to the specific circumstances of this case. The School District makes three arguments. First, it argues its Insurer breached its duty to defend because it initially "unambiguously and complete[ly]" refused to provide a defense and should not be allowed to avoid the consequences of its choice by agreeing to defend six months later. Second, it argues its Insurer breached its duty to defend because the Insurer did not start paying for the defense for almost one year after the Insurer's initial denial, and the Insurer did not fully reimburse the School District for the attorney fees the School District incurred in defending the liability suit before the Insurer stepped in. Third, the School District says the four-corners rule prohibits the

16

circuit court from considering the Insurer's actions in attempting to secure a coverage determination. The School District asks this court to reverse the court of appeals decision, hold that the Insurer is responsible for both unreimbursed liability attorney fees and all attorney fees incurred to establish coverage, and remand the case to the circuit court for a determination of the amount of those fees.

1. Insurer's Initial Coverage Refusal and Delayed Defense

¶22 The School District argues the Insurer's initial coverage denial constituted a breach of its duty to defend and the Insurer's later decision to defend and pay attorney fees retroactive to the date of tender cannot remedy the breach. We conclude that the Insurer's actions did not constitute a breach of its duty to defend because, even though the Insurer initially denied coverage, it followed one of this court's preferred methods to obtain a judicial determination on coverage before the liability suit proceeded. See Newhouse, 176 Wis. 2d at 836 (when an insurer follows a judicially preferred method, the insurer "runs no risk of breaching its duty to defend"); see also Carney, 60 F.3d at 1277 ("[A]n insurer who properly follows the procedure recommended by the Wisconsin Supreme Court of first seeking a determination on coverage prior to the liability issue, has not breached its duty to defend.").

¶23 The School District misconstrues Water Well, 369 Wis. 2d 607, to mean that an Insurer who initially denies coverage is in breach even if it proceeds to follow one of the judicially

17

preferred methods.  Water Well does not say that.  In Water Well, the insurer unilaterally denied coverage during the pendency of the underlying lawsuit.  The insurer in Water Well did not follow any of the judicially preferred methods because it determined the complaint did not allege any covered claims.  In that case, this court contrasted the unilateral denial with the judicially preferred methods only because the insurer never changed its unilateral denial posture.  The School District's case involves a unilateral denial, shortly after which the Insurer followed one of the judicially preferred methods.  In order to avoid breaching the insurance contract, an insurer who initially denies must timely seek a judicial determination on coverage.  See United States Fire Ins. Co. v. Good Humor Corp., 173 Wis. 2d 804, 830-31, 496 N.W.2d 730 (Ct. App. 1993) (holding an Insurer's motion seeking declaratory judgment on coverage was untimely because it was not filed until after liability case had resolved).  Water Well does not support the School District's argument.

¶24  Moreover, an insurer has the "right and obligation to make timely investigation" as "a condition precedent to [its] contractual duties of defense and coverage." Gerrard Realty Corp. v. American States Ins. Co., 89 Wis. 2d 130, 140, 277 N.W.2d 863 (1979).  The law necessarily permits an insurer to investigate a claim before accepting the defense:  "Certainly, an insurer cannot make a reasoned judgment as to its duty to defend or provide coverage until [it has] had the opportunity to examine and review the factual situation and the pleadings as they relate to the terms

18

of the[] policy of insurance." Id. at 142. An insurer cannot breach its duty to defend based on its insured having incurred defense costs during the investigation period if an insurer reimburses the insured for defense costs retroactive to the date of the claim. Lakeside Foods, Inc. v. Liberty Mut. Fire Ins. Co., No. 2009AP1428, unpublished slip op., ¶¶41-43 (Wis. Ct. App. July 21, 2010) (holding insurer did not breach its duty to defend because the three-month delay was attributed to the insurer's investigation of the matter); see generally Danner v. Auto-Owners Ins., 2001 WI 90, ¶58, 245 Wis. 2d 49, 629 N.W.2d 159 (noting an insurer "should not be found to have acted in bad faith for thoroughly investigating a claim" because sometimes it is difficult for the insurer to distinguish between legitimate and fraudulent claims).

¶25 It is undisputed that the Insurer, when presented with the School District's tender, responded by letter within a week, explaining why the Insurer concluded that the Complaint did not allege any covered claims. The Insurer explained that the allegations in the Complaint assert "deliberate" acts not covered by the insurance policies, which cover only negligent acts. In the letter, the Insurer asked the School District to notify the Insurer if it agreed with the Insurer's coverage analysis and advised that if the School District did not agree, the Insurer would seek a coverage determination in the circuit court.

¶26 Within a week of receiving the School District's written notification that it would dispute the denial of coverage, the

19

Insurer filed a motion asking to intervene in the liability lawsuit, to bifurcate the liability and coverage issues, and to stay the liability case so that coverage could be decided promptly. These actions precisely followed one of the judicially preferred approaches this court has said will protect an insurer from breaching its duty to defend. Specifically, the Insurer moved "to bifurcate and stay" the liability suit pending a coverage determination. The Insurer cannot be faulted for doing exactly what this court for years has instructed insurers to do.

¶27 The time gap between the filing of the Insurer's motion and the circuit court's decision necessarily caused the School District to incur attorney fees it would not have had to pay had the circuit court granted the Insurer's motion to stay the liability proceedings. The circuit court did not decide the motion for three-and-a-half months, leaving the School District with defense costs as litigation over liability continued. During that time, the School District's attorney filed and argued a motion to dismiss, which was denied. The School District paid an attorney to defend it on the liability claim while also paying its attorney to litigate the coverage issue. When the circuit court finally decided the Insurer's motions on December 12, 2013, it allowed the Insurer to intervene and granted the motion to bifurcate, but it denied the motion to stay liability, resulting in the insured

20

incurring additional attorney fees.[9] The circuit court's decision caused the School District to pay attorney fees for litigating both coverage and liability, which the judicially preferred procedures in coverage disputes are designed to prevent.

¶28 Within two weeks of the circuit court's decision denying the stay of liability proceedings, the Insurer notified the circuit court that it would pay for the defense of the School District. Within one month of the circuit court's decision denying the motion to stay, the Insurer notified the School District that it would defend the School District under a reservation of rights.[10] The letter suggests prior communication between the School District and the Insurer, as the Insurer acknowledges "its understanding" that the School District wanted to retain the attorney the School District had hired. The Insurer indicated doing so was "acceptable to The Insurers provided an agreement can be reached on the hourly rates to be charged by the firm." The Insurer also asked the

---

[9] Between December 12, 2013 and January 14, 2014, the record contains 29 items, including filings related to the School District's request for a stay so that it could seek an interlocutory appeal challenging the circuit court's denial of its motion to dismiss. Some of the record items relate solely to the coverage issue, including the Insurer's Complaint for Declaratory Judgment and its motion seeking summary judgment on coverage.

[10] The School District argues the Reservation of Rights letter was infirm because the letter reserved the Insurer's right "to seek reimbursement of defense costs paid in this action in whole or in part to the extent permitted by applicable law." We decline to address this argument because it involves actions that did not occur. "Courts will not render merely advisory opinions." Tammi v. Porsche Cars N. Am., Inc., 2009 WI 83, ¶3, 320 Wis. 2d 45, 768 N.W.2d 783 (quoted source omitted).

21

School District to have the firm send its fee schedule to the Insurer for approval.

¶29 The Insurer acted consistently with well-established cases outlining an insurer's obligations in order to avoid breaching its duty to defend.  It followed a judicially preferred approach and when the circuit court's rulings forced its Insured to simultaneously defend itself on both liability and coverage, the Insurer stepped in to defend the School District on liability and agreed to pay for all reasonable liability attorney fees the School District incurred retroactive to the date of tender.  The circuit court acknowledged that it, not the Insurer, was responsible for the Insured having to simultaneously pay both liability and coverage attorney fees.  The Insurer cannot be deemed in breach of its duty to its Insured given that it acted to prevent its Insured from paying for both liability and coverage, but the

circuit court's actions thwarted its attempt. The Insurer satisfied its obligations under the insurance contract.[11]

¶30 The judicially preferred methods in coverage disputes are designed to prevent this double pay scenario for insureds. Promptly employing the "recommended bifurcation procedure of first conducting a trial on the coverage issue" protects insureds against concurrently paying for both a liability defense as well as coverage attorney fees. Barber v. Nylund, 159 Wis. 2d 192, 197, 461 N.W.2d 809 (Ct. App. 1990). Indeed, staying liability after granting bifurcation is generally the best practice. See Reid, 245 Wis. 2d 658, ¶27 (noting that after bifurcation, resolution of the coverage issue is "a relatively simple matter" and encouraging courts "to expedite resolution of the coverage issue"). Since at least 1986, this court has been encouraging circuit courts to

---

[11] Any damage to the insured as a result of the delay is remedied by an insurer paying for reasonable liability attorney fees retroactive to the date of tender, and any additional damages arising from an insurer's unreasonable actions or reckless disregard for its duties under the insurance contract can be pursued in a bad faith suit. See Am. Design & Build, Inc. v. Houston Cas. Co., No. 11-C-293, 2012 WL 719061, at *11 (E.D. Wis. Mar. 5, 2012) (citing Lakeside Foods, Inc. v. Liberty Mut. Fire Ins. Co., No. 2009AP1428, unpublished slip op., ¶¶31-32, 40-49 (Wis. Ct. App. July 21, 2010); Anderson v. Continental Ins. Co., 85 Wis. 2d 675, 691, 271 N.W.2d 368 (1978) ("To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim."). The School District did not assert any bad faith claims against the Insurer. Nor could it. The record confirms the Insurer acted reasonably, in conformance with this court's guidelines, and consistent with its contractual obligations.

resolve the coverage issue expeditiously for the benefit of the insured:

> It would seem that, once an order to bifurcate has been made, a trial on a coverage issue should be a relatively simple matter.  We, therefore, encourage a court which has ordered bifurcation to expedite the coverage issue by placing the trial on its calendar at an early date to assist in avoiding a needlessly protracted claim against the insured.

See Mowry, 129 Wis. 2d at 529 n.4 (emphasis added).  We continue to encourage circuit courts to decide bifurcation and stay motions expeditiously and to grant the requested stay unless case-specific factors weigh against it.

## 2. Attorney Fees Payment Issues

### a. Delay in Paying for Defense

¶31  The School District also faults the Insurer for the delay in reaching an agreement on attorney fees.  The School District argues this establishes a breach of the Insurer's duty to defend.  We disagree.

¶32  The record is woefully inadequate for a complete review of this issue; consequently, the School District forfeited review.  Nickel v. United States (In re Rehab. of Segregated Account of Ambac Assurance Corp.), 2012 WI 22, ¶10, 339 Wis. 2d 48, 810 N.W.2d 450 ("Our case law is clear and consistent: failure to [adequately] preserve issues at the circuit court means that they are waived.").  It is unclear if the School District or its attorney engaged in fee negotiations with the Insurer, or what those negotiations entailed.  Without any information regarding what negotiations took place or when, it is impossible to determine whether or to

24

what extent any delay is attributable to the Insurer, the School District, its attorney, or other factors.

¶33 We do know that in January 2014, the Insurer asked the School District to share its fee schedule so that negotiations could occur. We also know the School District amended its cross-claim in April 2014 to allege that its attorney "advised" the Insurer of its fee schedule in January 2014, March 2014, and twice in April 2014. The cross-claim alleged that the Insurer "failed and refused to respond" to each advisement. However, the Insurer's reply to the cross-claim denies this.

¶34 There is also an indication that the Insurer never received one of the attorney's invoices. An affidavit from the School District's attorney attests that the attorney sent invoices to the Insurer as it requested, describing: (1) the amount of the invoices; (2) the amount the Insurer paid; and (3) the difference between those two amounts that remained unreimbursed. However, the affidavit does not identify the dates the attorney sent the invoices to the Insurer or the date the Insurer paid each invoice. Additionally, the affidavit is vague as to whether the Insurer made payment to the attorney or the School District.

¶35 Moreover, the Invoices attached to the liability attorney's affidavit are substantially redacted, with some descriptions of services completely blacked out and others listed only as "Review" or "Continue Review" or something similar. The limited content of the invoices certainly could have impeded the Insurer's determination of what fees were reimbursable and whether

25

each itemized service represented the attorney's work on liability or something else.

¶36 Further, the record does not reflect the exact date fee negotiations concluded. There is a reference to non-payment for three months, as well as indications that a fee agreement was reached in April 2014, in May 2014, or no later than June 1, 2014. The record does show that as of June 22, 2016, the Insurer paid liability attorney fees in the amount of $260,021.32.

¶37 It is not surprising that negotiations on attorney fees would take some time given that the School District retained its own attorney prior to the commencement of the lawsuit, and the Insurer subsequently stepped in to defend, agreeing to allow its insured's chosen attorney to continue the representation.[12] The Insurer is obligated to compensate the liability attorney only at a reasonable rate, reflecting the market standard associated with the type of case and for that geographic location, among other relevant factors. See Fireman's Fund Ins. Co., 261 Wis. 2d 4, ¶¶68-69; 14 Couch on Ins. § 202:34 ("An insurer's obligation to reimburse independent counsel is limited to reasonable attorney's fees and disbursements."). Even when an insurer breaches its duty to defend, the attorney fees awarded as damages must be reasonable. See Elliott, 169 Wis. 2d at 325 (remanding for a determination of reasonable attorney fees).

---

[12] The School District was aware of the impending lawsuit because the retired employees had filed a Notice of Claim.

26

¶38 Accordingly, we reject the School District's argument that the delay in payment of fees means the Insurer breached its duty to defend. Because the law requires attorney fees to be reasonable, an Insurer is entitled to review fees and negotiate a reasonable rate. The record in this case contains no determination from the circuit court on any of these issues, without which we cannot assess whether a delay in payment constituted a breach of the Insurer's duty. The inadequacy of the record means the School District forfeited review of this issue. Nickel, 339 Wis. 2d 48, ¶10 ("Our case law is clear and consistent: failure to [adequately] preserve issues at the circuit court means that they are waived.").

b. Unreimbursed Liability Attorney Fees

¶39 The School District also argues the Insurer breached its duty to defend by failing to reimburse it for the full amount it expended in liability fees. It contends the Insurer's reimbursement fell short by approximately $50,000. We reject this contention for the same reasons we rejected the School District's argument regarding delayed reimbursement: (1) attorney fees must be reasonable, and (2) the record on unreimbursed liability attorney fees is sorely incomplete. While the record contains the specific amounts of liability fees in dispute as well as the amount the Insurer paid, we agree with the court of appeals that it is "impossible to properly consider [the School District's] unpaid fees argument" because "[t]he District leaves us to guess as to

27

the scope and details of the agreements" between the parties.[13] Additionally, the School District appealed from an order addressing only coverage fees, not unreimbursed liability fees. Furthermore, it is undisputed that neither the School District nor its liability attorney utilized the Insurer's process for appealing the Insurer's decision to pay less than the amount of the attorney fees invoice.

### 3. Four-Corners Rule

¶40 The School District also asserts the circuit court should examine only the four corners of the complaint to assess whether the Insurer breached its duty to defend and cannot consider any actions by the Insurer. The four-corners rule is the well-established standard used to assess whether a duty to defend exists. Water Well, 369 Wis. 2d 607, ¶¶19-20. No extrinsic evidence can be used to ascertain whether the Complaint alleges a covered claim. Id., ¶24.

¶41 The School District misunderstands this court's holding in Water Well. We never prohibited a circuit court from considering the actions an insurer took to obtain a judicial determination on coverage. Nor did we say the circuit court cannot take into account that the insurer followed a judicially preferred method to determine coverage. We held the circuit court cannot consider extrinsic evidence the insured, insurer, or anyone else might know about circumstances relating to the substance of the Complaint that are not within the four corners of the Complaint.

---

[13] See Choinsky, 386 Wis. 2d 285, ¶¶13-14, 18, 34 n.10.

28

In Water Well, the insured asked the court to consider extrinsic evidence about the product at issue, claiming the complaint's allegations about the product were "factually incomplete or ambiguous." Id., ¶2. This court refused Water Well's request and reaffirmed that in assessing whether the duty to defend exists, a court cannot look beyond the four corners of the Complaint. Id., ¶¶23-24. Once the duty to defend has been established, the four-corners rule no longer applies. See Sustache, 311 Wis. 2d 548, ¶¶27-29.

¶42 Water Well did not disturb Wisconsin coverage law: a court is bound by the four-corners rule when deciding whether the Complaint alleges a covered claim triggering the insurer's duty to defend. Once a court concludes a duty to defend exists, the insurer's actions—unilaterally denying coverage, opting for a judicially preferred procedure to determine coverage, or something else—will be examined to decide whether the insurer breached its duty to defend.

## IV. CONCLUSION

¶43 The Insurer did not breach its duty to defend the School District because even though it concluded the Complaint did not allege a covered claim and issued a denial letter, it followed a judicially preferred method for having coverage decided before liability. When the circuit court denied the Insurer's motion to stay the liability proceedings, the Insurer provided a full defense, retroactive to the date of tender. By doing so, the Insurer complied with its contractual responsibilities to its

Insured and therefore is not responsible for the School District's coverage attorney fees.  This court has repeatedly said that when an insurer follows a judicially preferred procedure to resolve a coverage dispute, it will not risk breaching its duty to defend.  When an insurer seeks bifurcation and a stay, it must defend the insured and pay its attorney fees retroactive to the date of tender if the circuit court denies any part of the motion.  We strongly encourage circuit courts to promptly decide these motions and to grant a stay of the liability proceedings whenever possible and appropriate.

¶44  We reject the School District's assertions that the delayed defense, the time necessary to negotiate reasonable attorney fees, and the unreimbursed $50,000 in liability fees establish a breach by the Insurer.  The law permits an insurer to investigate a claim before defending and requires payment of only reasonable attorney fees.  An insufficient record prevents full review of the fees issues the School District raises.

¶45  Finally, we reject the School District's contention that the four-corners rule confines the circuit court's consideration of whether an insurer breached its duty to defend.  The four-corners rule governs the determination of whether a duty to defend exists, but courts necessarily consider the insurer's actions in unilaterally denying coverage, or following a judicially preferred approach to obtaining a judicial decision on coverage, in order to assess whether the insurer breached its duty to defend.

*By the Court.*—The decision of the court of appeals is affirmed.

¶46  BRIAN HAGEDORN, J., did not participate.

¶47 DANIEL KELLY, J. *(dissenting).* I agree (mostly) with the court's statement of the law governing an insurer's duty to defend its insured when there is disagreement over coverage. I don't agree, however, that an insurer can buy its way out of its breach of that duty by reimbursing its insured for defense costs. Because the Insurer[1] in this case refused to provide attorneys for their insured during a period of time that our cases unmistakably say they owed the insured a defense, I conclude it breached its contractual obligations. For these reasons, I respectfully dissent.

¶48 This case is, as the court stated, about the Insurer's defense obligations when it chooses to protect its interests by filing a motion "requesting a bifurcated trial on coverage and liability and a stay of the proceedings on liability until coverage is determined." Majority op., ¶17. The court said "[t]his case presents a problem with [the bifurcate-and-stay] option when the circuit court denies the bifurcation or stay motion, resulting in the insured defending itself for a period of time on both liability and coverage." Id., ¶19. To protect itself from a breach of contract claim under such circumstances, the court says, "the insurer must defend its insured under a reservation of rights so that the insured does not have to pay to defend itself on liability and coverage at the same time." Id.

---

[1] I will collectively refer to Employers Insurance Company of Wausau and Wausau Business Insurance Company as the "Insurer" to be consistent with the court's opinion.

1

¶49 I agree with this much of the court's statement of the law. But I think it requires greater clarification because the application of that principle in this case demonstrates its statement provides a lacuna in the Insurer's defense obligations that leaves the insured paying for attorneys to litigate both the merits and coverage aspects of the case.

¶50 The duty to defend, as the court correctly states, begins upon service or tender of a coverage-implicating complaint: "The duty to defend arises when an insurer is served with a complaint that 'alleges facts that, if proven, would constitute a covered claim' or when an insured who is served with a complaint alleging a covered claim tenders the defense to its insurer." Id., ¶16 (quoting Estate of Sustache v. Am. Family Mut. Ins. Co., 2008 WI 87, ¶27, 311 Wis. 2d 548, 751 N.W.2d 845).

¶51 The insurer fulfills its duty to defend, of course, by "appoint[ing] defense counsel for its insured . . . ." Estate of Sustache, 311 Wis. 2d 548, ¶27 (internal marks omitted). And the insurer's duty to provide defense counsel continues until final resolution of the coverage issue: "Wisconsin policy is clear. If the allegations in the complaint, construed liberally, appear to give rise to coverage, insurers are required to provide a defense until the final resolution of the coverage question by a court." Olson v. Farrar, 2012 WI 3, ¶30, 338 Wis. 2d 215, 809 N.W.2d 1 (emphasis added).

¶52 This duty is unaffected by an insurer's request to bifurcate and stay the merits phase of the case. Mowry v. Badger State Mut. Cas. Co., 129 Wis. 2d 496, 523, 385 N.W.2d 171 (1986)

2

("[I]f an insurer is granted a bifurcated trial under [Wis. Stat.] § 803.04(2)(b) [(1985-1986)], . . . an insurer's duties to its insured should not be suspended pending the outcome of the coverage trial." (emphasis added)); Barber v. Nylund, 158 Wis. 2d 192, 198, 461 N.W.2d 809, (Ct. App. 1990) ("The law appears settled that even if an insurer is granted a bifurcated trial under [§] 803.04(2)(b) [(1989-1990], . . . an insurer's duties to its insured are not suspended pending the outcome of the coverage trial." (emphasis added)). It necessarily follows that if granting a bifurcated trial on the merits does not relieve the insurer of its defense obligations, the obligations existed prior to the motion. Once triggered by service or tender of a qualifying complaint, therefore, the duty to defend continues unabated until final resolution of the coverage question, notwithstanding the filing of a motion to bifurcate and stay the merits phase of the case.

¶53 Here, however, the court allowed the Insurer to escape its defense obligations. The circuit court declared that the complaint described a cause of action that, if proved, would be covered by the insurance policies at issue. Consequently, the duty to defend arose when the School District tendered the complaint to the Insurer. But the Insurer did not provide a defense; it rejected the tender, and thereafter filed a complaint requesting a declaration that it owed no duty to defend or indemnify the School District. It then moved the circuit court to bifurcate and stay the merits phase of the underlying case. The circuit court granted the bifurcation motion, but did not grant

3

the requested stay. The Insurer then said it would defend under a reservation of rights, but it did not start doing so until January 14, 2014 (the date on which it started paying for the School District's attorneys).

¶54 For a period of over 5 months, therefore, the Insurer did not, in fact, provide a defense. And this failure occurred during a period of time our cases say the Insurer owed an unabated duty to defend the School District. So the Insurer breached its contractual obligations. The court concludes otherwise, however, stating that "the Insurer's actions did not constitute a breach of its duty to defend because, even though the Insurer initially denied coverage, it followed one of this court's preferred methods to obtain a judicial determination on coverage before the liability suit proceeded." Majority op., ¶22. But as discussed above, filing a motion to bifurcate and stay the merits phase of the case does not relieve the Insurer of its duty to defend.

¶55 I don't know how to describe the unexcused failure to perform an unabated contractual obligation as anything but a breach of contract. Insurers know their refusal to provide a defense is courting liability to its insured:

> An insurer also has the option to "[d]eny the tender of defense and state the grounds for deciding that the complaint does not trigger any obligation to defend under the policy." If, however, an insurer chooses this option "it does so at its own peril." By declining to defend an insured, an insurer opens itself up to a myriad of adverse consequences if its unilateral duty to defend determination turns out to be wrong. For example, an insurer that breaches its duty to defend is liable for all costs naturally flowing from the breach.

4

Water Well Sols. Serv. Grp., Inc. v. Consol. Ins. Co., 2016 WI 54, ¶28, 369 Wis. 2d 607, 881 N.W.2d 285 (quoted source omitted). The Insurer gambled that its evaluation of the complaint against the School District was correct. It was not, and so it bears the consequences of losing that gamble. Id.

¶56 The court, however, allows the Insurer to buy its way out of its failed gamble. It says that, in such circumstances, "[a]n insurer cannot breach its duty to defend based on its insured having incurred defense costs during the investigation period if an insurer reimburses the insured for defense costs retroactive to the date of the claim." Majority op., ¶24. Here, then, is as entirely new concept in the continued effort to achieve a détente between the interests of insurers and their insureds. Introducing the concept of a "retroactive defense" allows an insurer to refuse its duty to defend between: (a) tender of a coverage-implicating complaint; and (b) the court's resolution of coverages issues. It risks nothing doing so because, in the worst case, it simply pays for the defense it refused to provide.

¶57 The "retroactive defense" concept may or may not be a wise policy, but it is definitely new. The primary case the court cited in support of this proposition was an unpublished court of appeals decision (which, by definition, can supply no new statement of the law). Lakeside Foods, Inc. v. Liberty Mut. Fire Ins. Co., No. 2009AP1428, 2010 WL 2836401, unpublished slip op., (Wis. Ct. App. Jul. 21, 2010). And Lakeside Foods, Inc. did not even purport to analyze this issue, merely stating that "during the pendency of its coverage investigation, Liberty knew that Lakeside was

represented by counsel, and presumably knew that it would be obligated to pay Lakeside's fees dating back to the tender of defense." Id., ¶43. That is not a statement of law, it's just a description of what the insurer in that case believed its obligation to be. The Lakeside Foods, Inc. court did not say the insurer was correct in its observation, did not analyze the issue, and made no normative statement on the subject.

¶58 The only other authority the court offered in support of its "retroactive defense" proposition was Danner v. Auto-Owners Ins., 2001 WI 90, ¶58, 245 Wis 2d 49, 629 N.W.2d 159. The court says Danner noted that "an insurer 'should not be found to have acted in bad faith for thoroughly investigating a claim' because sometimes it is difficult for the insurer to distinguish between legitimate and fraudulent claims." Majority op., ¶24. That may be so, but it didn't have anything to say about the duty to defend, or the concept of a "retroactive defense," mostly because Ms. Danner was not the defendant. Instead, Ms. Danner had made a claim under her underinsured motorist policy. To the extent Danner addressed the thorough investigation of a claim, it did so in the context of indemnification, not the duty to defend.

¶59 Additionally, citing Danner in the context of this case carries the uncomfortable suggestion that an insurer's duty to defend can be deferred pending a thorough investigation of the claim. It can't. Investigation into the duty to defend goes no further than comparing the complaint to the insurance policy. Estate of Sustache, 311 Wis. 2d 548, ¶27 ("[W]hen a complaint alleges facts that, if proven, would constitute a covered claim,

6

the insurer must appoint defense counsel for its insured without looking beyond the complaint's four corners." (internal marks omitted)).[2]

¶60 Finally, because I conclude that the Insurers breached their duty to defend, the School District is entitled to recover certain damages resulting from that breach. See Water Well Sols. Serv. Grp., 369 Wis. 2d 607, ¶28 ("[A]n insurer that breaches its duty to defend is liable for all costs naturally flowing from the breach."). Those damages include the attorney's fees necessary to establish coverage. Elliott v. Donahue, 169 Wis. 2d 310, 322, 485 N.W.2d 403 (1992). There, we said:

> The insurer that denies coverage and forces the insured to retain counsel and expend additional money to establish coverage for a claim that falls within the ambit of the insurance policy deprives the insured the benefit that was bargained for and paid for with the periodic premium payments. Therefore, the principles of equity call for the insurer to be liable to the insured for expenses, including reasonable attorney fees,

---

[2] See also W. Bend Mut. Ins. Co. v. Ixthus Med. Supply, Inc., 2019 WI 19, ¶10, 385 Wis. 2d 580, 923 N.W.2d 550 ("In assessing whether a duty to defend exists, we compare the four corners of the underlying complaint to the terms of the entire insurance policy." (internal marks and quoted source omitted)); Water Well Sols. Serv. Grp., Inc. v. Consol. Ins. Co., 2016 WI 54, ¶15, 369 Wis. 2d 607, 881 N.W.2d 285 ("Longstanding case law requires a court considering an insurer's duty to defend its insured to compare the four corners of the underlying complaint to the terms of the entire insurance policy."); Olson v. Farrar, 2012 WI 3, ¶29, 338 Wis. 2d 215, 809 N.W.2d 1 ("Accordingly, an insurer must defend all suits where there would be coverage if the allegations were proven, even if the allegations are 'utterly specious.' (quoted source omitted)); Newhouse by Skow v. Citizens Sec. Mut. Ins. Co., 176 Wis. 2d 824, 835, 501 N.W.2d 1 (1993) ("The duty to defend is triggered by the allegations contained within the four corners of the complaint.").

incurred by the insured in successfully establishing coverage.

Id. Thus, we ought to remand this matter to the circuit court for a determination of fees the School District reasonably incurred in establishing coverage.

* * *

So, I agree with the court that when an insurer follows one of the judicially-prescribed methods for contesting coverage it does not breach its contractual obligations. Until today, however, no part of the judicially-prescribed options allowed an insurer to refuse its defense obligations in favor of reimbursing its insured's defense costs at some undefined future date. Therefore, I respectfully dissent.